361 A.2d 676

**Russell J. BOLLINGER et al.**

**v.**

**PALMERTON AREA COMMUNITIES ENDEAVOR, INC., Appellant.**

Superior Court of Pennsylvania.

June 28, 1976.

344

Anthony R. Thompson, Allentown, for appellant.

Richard W. Webb, Palmerton, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from the order of the court below granting plaintiff-appellee's motion for summary judg-

ment. On two levels, this is not a case suitable for disposition through summary judgment procedure. We reverse.

Plaintiff-appellee, Bollinger Brothers, was the record owner of a 16-acre tract of land in Carbon County. In December of 1960 said tract of land was conveyed, for no consideration, to defendant-appellant, Palmerton Area Communities Endeavor, Inc., (Palmerton) under an alleged [1] express agreement that the tract of land was to be used "only for industrial development purposes." [2]

---

1. *See* note 7 infra.
2. The *Articles of Agreement* attached as Exhibit "A" to the Plaintiff's Amended Complaint contained the following:
   "IT IS FURTHER UNDERSTOOD by and between the parties hereto, that the property so transferred to the Corporation shall be used *only for industrial development purposes.* The use or attempted use of this property for any other purpose will give to the Bollinger Brothers, the right to defeat this conveyance. It is further specifically provided that in the event any of the property therein conveyed is not being used for industrial development purposes and is condemned by the right of eminent domain by any governmental or municipal authority, the damages for such condemnation shall remain the property of Bollinger Brothers and any right of action, legal or otherwise, arising out of said condemnation, shall remain the right of action and legal remedy of the Bdlinger [sic] Brothers.
   "Industrial purposes as set forth in this section shall mean land used for any tenant acquired by the Corporation, or land used as the right of way to any land, whether within or without the description aforementioned, or any purposes whatsoever which is in furtherance of the purposes as set forth in the Articles of Incorporation Purpose Clause of Palmerton Area Communities Endeavor, Inc." (Emphasis added.)
   The *Articles of Incorporation Purpose Clause* referred to in the *Articles of Agreement* reads in pertinent part as follows:
   "The purpose or purposes of the corporation are—
   To promote the economic development of the Palmerton trade area and for that purpose, in order to create employment in this area, to purchase, lease, take in exchange, or otherwise acquire, lands or interests therein, together with any buildings or structures that may be on the said lands or any of them, and to sell, lease, exchange, or otherwise dispose of the whole or any part or portion of the lands . . . and to do all and everything necessary, suitable and proper, for the accomplishment of any of the purposes, or the attainment of any of the objects, or the furtherance of any of the powers hereinbefore set forth, either alone or in association with other corporations, firms or individuals, and to do every other act or acts, thing

On June 7, 1968, Palmerton executed and delivered to the Pennsylvania Power and Light Company a right-of-way agreement.[3]

Bollinger Brothers' Amended[4] Complaint in Assumpsit, filed November 9, 1972, alleged the above facts and further alleged via conclusory pleading that the right-of-way was not "for industrial development purposes," and that the right-of-way "permanently render[ed] a portion of said tract unfit for industrial development as contemplated by the parties and as provided for in the 'Purpose Clause' of the Articles of Incorporation [see note 2 supra] of the defendant . . . ." Bollinger Brothers demanded judgment against Palmerton in the sum of $19,000.00 with interest from June 7, 1968 (the date of the right-of-way conveyance), said sum representing the consideration paid[5] to Palmerton by the Pennsylvania Power and Light Company for the right-of-way.

Palmerton's answer[6] *denied* that the agreement attached as an exhibit to the Bollinger Brothers' complaint,

or things, incidental or appurtenant to or growing out of or connected with the powers of said corporation, as herein described, or any part or parts thereof, provided, however, that the same shall not be inconsistent with the laws under which this corporation is organized . . . ."

3. Pennsylvania Power and Light Company constructed an electric transmission line over the right-of-way.

4. Palmerton filed preliminary objections to Bollinger Brothers' original Complaint in Assumpsit averring, *inter alia,* the Bollinger Brothers had failed to attach a copy of Palmerton's Articles of Incorporation to their complaint. See Pa.R.C.P. No. 1019(h). Bollinger Brothers was given leave to amend its complaint and a new complaint was filed to which was attached a copy of Palmerton's Articles of Incorporation.

5. Palmerton's answer to the Amended Complaint recites that the $19,000.00 represents only "some" of the consideration paid to defendant by the Pennsylvania Power and Light Company.

6. Palmerton filed a preliminary objection in the nature of a demurrer to Bollinger Brothers' Amended Complaint in Assumpsit. In an opinion by the lower court, filed June 21, 1973, the preliminary objection was dismissed and Palmerton was directed to file an answer within 20 days. While Palmerton's preliminary objection in the nature of a demurrer is a pleading, *see* Pa.R.C.P.

*see* note 2 supra, "ever came into existence as a binding obligation . . ." and demanded proof thereof.[7] Palmerton, via conclusory pleading, denied that the grant of a right-of-way prohibited the use of the 16-acre tract for industrial development purposes, and averred to the contrary that "the portion of the land burdened by said right-of-way can be used in furtherance of industrial development purposes and, in all events, is in furtherance of and within the purposes and powers of Defendant's Articles of Incorporation." Palmerton further denied that the conveyance of the right-of-way rendered the right-of-way portion unfit for industrial development purposes and averred to the contrary that "the portion of the tract burdened by the said right-of-way is capable of being used for industrial development purposes and for purposes outlined in Defendant's Articles of Incorporation." Palmerton also raised in New Matter, *inter alia,* the defenses of waiver and estoppel in that Bollinger Brothers had prior knowledge of Palmerton's intention to make the right-of-way conveyance.[8] Bollinger Broth-

No. 1017, that shall be considered in ruling on the appropriateness of a motion for summary judgment, *see* Pa.R.C.P. No. 1035, it is unnecessary to *set* forth in detail the issues raised therein. Palmerton's answer to the Amended Complaint, and affidavit in opposition to Bollinger Brothers' motion for summary judgment show that there are "genuine issue[s] as to . . . material fact [such that] the moving party [Bollinger Brothers] is [not] entitled to judgment as a matter of law." Pa.R.C.P. No. 1035(b). *See* text following this note.

7. Palmerton's answer at paragraph 4, Printed Record at 25a, read: "After reasonable investigation Defendant is without knowledge or information sufficient to form a belief as to whether or not the alleged agreement, attached to Plaintiffs' Complaint as Exhibit "A", ever came into existence as a binding obligation upon Defendant, and proof thereof is demanded." This constituted a denial of Bollinger Brothers' averment of an express agreement. *See* Pa.R.C.P. No. 1029(c).

8. Albeit these defenses were conclusory, in that the material facts upon which they were based were not pled, *see* Pa.R.C.P. No. 1019(a), Palmerton's affidavit in opposition *to* Bollinger Brothers' motion for summary judgment, to which we must ultimately look to ascertain "genuine issues of material fact" amplified the factual underpinning of these defenses. *See* text following this note.

ers' reply to *New Matter* denied the waiver and estoppel defenses, in essence submitting that Palmerton had made no showing that it had been prejudiced by Bollinger Brothers' conduct.

At the close of the pleadings, pursuant to Pa.R.C.P. No. 1035, Bollinger Brothers moved for summary judgment and supported said motion with an affidavit made by Lloyd A. Bollinger, a member of the Bollinger Brothers partnership.[9] "When a motion for summary judgment is made and supported as provided in this rule [by affidavit], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by *affidavits* or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Pa.R.C.P. No. 1035(d) (emphasis added).

Palmerton opposed the motion for summary judgment with an affidavit [10] made by Elmer E. Strohl,

9.  It is an understatement to observe that this affidavit added little if anything to the "conclusory averments of fact" in the instant case. Lloyd Bollinger testified *inter alia* that "[i]t was the understanding of Bollinger Brothers and Palmerton Area Communities Endeavor, Inc., that this land would be used for industrial development only," and that "[t]he conveyance of the right-of-way has rendered unfit a portion of the tract for industrial development in violation of the understanding and agreement between [the parties]  . . . ."

10.  Only on appeal, does Bollinger Brothers argue that this affidavit is not competent evidence in determining if summary judgment is appropriate in the instant case. Pa.R.C.P. No. 1035(d) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The affidavit of Mr. Strohl was given "to the best of his knowledge, information and belief." While the affidavit, not being based on personal knowledge, is insufficient when tested by Pa.R.C.P. No. 1035(d), *see Robbins v. Gould,* 278 F.2d 116 (5th Cir. 1960) (affidavit "to the best of my knowledge and belief" held insufficient), no objection to the competency of this evidence was made in the court below. The court below treated the affidavit as competent evidence, and Bollinger Brothers cannot at this time be heard to object. *See Associated Press v. Cook,* 513 F.2d 1300 (10th Cir.

a member of the Board of Directors of Palmerton Area Communities Endeavor, Inc., the pertinent parts of which are set forth in our analysis of the "genuine issues of material fact" present in this case. At this juncture it is appropriate to note that Palmerton's affidavit in opposition to Bollinger Brothers' motion for summary judgment must be tested in light of the following well-established legal principles: In *Toth v. Philadelphia*, 213 Pa.Super. 282, 285, 247 A.2d 629, 631 (1968) this Court stated: "It is well established that we can sustain a summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Pa.R.C.P. 1035(b) 12 P.S. Appendix; *Michigan Bank v. Steensen*, 211 Pa.Super. 405, 236 A.2d 565 (1967). *The record must be examined in the light most favorable to the nonmoving party. Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). The court must accept as true all well-pleaded facts in the plaintiff's [defendant herein] pleadings, giving the plaintiff [defendant herein] the benefit of all reasonable inferences to be drawn therefrom. Id. Finally, a summary judgment should be granted only when the case is clear and free from doubt. *Mallesky v. Stevens*, 427 Pa. 352, 235 A.2d 154 (1967)." (Emphasis added.) Moreover, in passing upon a motion for summary judgment, "it is no part of our function *to decide issues of fact but solely to determine whether there is an issue of fact to be tried* and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968)." *Ritmanich v. Jonnel Enterprises,*

1975) (formal defects in affidavit waived unless an objection is made, the trial court may consider the affidavit in ruling on the motion for summary judgment).

*Inc.*, 219 Pa.Super. 198, 203, 280 A.2d 570, 573 (1971) (emphasis added).

Applying the aforementioned principles to the instant case two conclusions are unassailable. The record was *not* examined in the light most favorable to the nonmoving party, Palmerton, and the lower court did not limit its inquiry to whether issues of fact were present but actually made factual determinations. This it could not do.[11]

### A.

Under Pa.R.C.P. No. 1035(b) summary judgment is appropriate only upon a showing by the moving party, "that there [are] no genuine issue[s] as to any material fact[s] and that the moving party is entitled to a judgment as a matter of law."

### I

The threshold issue in this case is whether a binding obligation between Bollinger Brothers and Palmerton, an obligation that limits the use of the tract of land in issue to "industrial development purposes," ever came into existence.

Palmerton's affidavit in opposition to the motion for summary judgment, *see* text supra, contains the following:

"A. There is a genuine issue of fact as to whether or not the tract of land was given to Defendant as an unconditional gift or contribution to a non-profit corporation or, in the alternative, whether the conveyance was made pursuant to the conditional agreement at-

11. In the opinion filed by the court, it said: "We adopt plaintiffs' brief in its entirety as our opinion in disposing of the matter before us." "[B]riefs are not part of the record, and the court may not consider facts not established by the record." *Erie Indemnity Co. v. Coal Operators Cas. Co.*, 441 Pa. 261, 265, 272 A.2d 465, 467 (1971) (footnote omitted) (citations omitted).

tached to Plaintiffs' Complaint. Said agreement, attached as Exhibit A, to Plaintiffs' Complaint, is not fully executed. Some of Defendant's officers and agents recall discussions about certain subject matters contained in said Exhibit A. However, Defendant does not believe that said discussions ever ripened into any agreement accepted by or authorized by Defendant. Defendant's board of directors never became aware of the existence of Plaintiffs' Exhibit A until after March 10, 1970 (many years after the original conveyance) when one of Plaintiffs' partners alleged the existence of it. In all events, whether or not Plaintiffs' Exhibit A ever came into existence as an agreement is a crucial issue of fact." Printed Record at 35a–36a.

The lower court found, as a matter of law, that the *Articles of Agreement, see* note 2 supra, signed by Gordon R. Reese in the capacity of president of Palmerton Area Communities Endeavor, Inc., Printed Record at 8a, constituted a binding obligation between Bollinger Brothers and Palmerton. The lower court stated that Palmerton in its preliminary objections never questioned the existence of a valid, binding obligation. Palmerton's preliminary objection in the nature of a demurrer stated: "Plaintiffs' cause of action is based upon a written agreement between plaintiffs' and the defendant, a copy of which plaintiffs attached to their Amended Complaint by exhibit." This statement was in no way dispositive of the existence of a binding obligation. "While it is commonly said that a demurrer admits the truth of all the relevant facts pleaded this does not mean that it admits those facts as a finality and for all purposes and that therefore the demurrant cannot be allowed to assert the contrary in any subsequent proceedings; if that were so the demurrant, upon his demurrer being overruled, could not thereupon file an answer denying the facts stated in the pleading to which he had demurred. All

that a demurrer does is to admit the facts for the *sole purpose* of testing the legal sufficiency of the challenged pleading; what it says in effect is that even if the facts set forth be true they do not constitute a legal claim, or defense to the claim, as the case may be." *Dippel v. Brunozzi,* 365 Pa. 264, 268–69, 74 A.2d 112, 115 (1950) (emphasis original). Further, the lower court found that Palmerton's answer did not deny the existence of the agreement, and, therefore, the *legal effect* of the agreement was a question of law for the court to decide. Without entering into a protracted discussion of the legal concepts of actual, implied or apparent authority of an agent to bind its principal, it suffices to say that Palmerton's answer and its affidavit in opposition to Bollinger Brothers' motion for summary judgment, *see* text supra (paragraph "A" of Mr. Strohl's affidavit), together with all "reasonable inferences to be drawn therefrom," *see Toth v. Philadelphia,* supra, do not, as a matter of law, foreclose any issue as to the power of Mr. Reese, Palmerton's president, to execute the aforementioned *Articles of Agreement.* The legal effect of an agreement is not in issue until the very existence of a binding obligation is established.

## II

Palmerton, in *New Matter,* raised the defenses of waiver and estoppel. *See* text supra. Palmerton's affidavit in opposition to the motion for summary judgment amplified the defense:

"F. One of the Plaintiffs' partners, Lloyd Bollinger, was a director of Defendant. *He participated in and approved the negotiations and terms and conditions of the right-of-way conveyance to Pennsylvania Power and Light Company.* He never voiced any objection or brought to Defendant's attention the existence of Plaintiffs' Exhibit A. Neither did he nor any other of Plaintiffs' partners ever indicate that the

right-of-way grant would be treated as a breach of any agreement or would entitle Plaintiffs to compensation therefor." (Emphasis added.)

The lower court concluded, *as a matter of law,* that the defenses of waiver and estoppel were not available to Palmerton "[s]ince the defendant does not allege in any of its pleadings that it has changed its position prejudicially as a result of relying on plaintiffs' inaction . . . ." It is unnecessary for us to undertake a complete review of the legal distinctions between the concepts of waiver, express or implied, and estoppel. "A waiver is the intentional relinquishment of a known right." *Linda Coal & Supply Co. v. Tasa Coal Co.,* 416 Pa. 97, 100, 204 A.2d 451, 453 (1964) (citation omitted). "[W]aiver can be determined, *as a matter of law,* where only one reasonable conclusion can be drawn from the *undisputed facts* . . . ." *Id.* at 101, 204 A.2d at 454 (emphasis added) (citations omitted). Waiver can be either express or implied and it is only when an implied waiver is relied upon as a defense that the elements of estoppel must be present, to-wit, prejudicial reliance. *See, Dougherty v. Thomas,* 313 Pa. 287, 169 A. 219 (1933). The question of whether there is an estoppel defense is for determination by the court only when all the facts are established. *See General Electric Co. v. N. K. Ovalle, Inc.,* 335 Pa. 439, 6 A.2d 835 (1939).

Reading the record in the light most favorable to Palmerton, Lloyd Bollinger, a partner in Bollinger Brothers and a director of Palmerton, "participated in and approved the negotiations and terms and conditions of the right-of-way conveyance . . . ." *See* text supra (Palmerton's affidavit). It cannot be said that the issues of waiver and estoppel are "clear and free from doubt." *Toth v. Philadelphia,* supra. While it is true that to the extent Palmerton's defense is based on implied waiver or estoppel prejudicial reli-

ance must be established, we must keep in mind what was said in *Schacter v. Albert*, 212 Pa.Super. 58, 61–62, 239 A.2d 841, 843 (1968): " 'The Court must consider both the record actually presented and the record *potentially possible at the time of trial. . . .' International al Latex Corporation v. Lexicon Products, Inc.*, 37 F.R.D. 524, 525, 526 (E.D.Pa.1965)." (Emphasis added.) It was error to hold, as a matter of law, that the record does not establish or cannot be developed to establish the requisite elements of waiver and/or estoppel.

### B.

Assuming the existence of a binding obligation, and assuming that the defenses of waiver and/or estoppel cannot be established, the essence of this case would then be the interpretation and construction of a written instrument. "The primary object in the interpretation of any written instrument is to ascertain and effectuate the intention of the parties." *Hess v. Jones*, 335 Pa. 569, 572, 7 A.2d 299, 300 (1939). Normally, the meaning of a written instrument is to be "ascertained in accordance with its plainly expressed intent." *Atlantic Refining Co. v. Wyoming National Bank*, 356 Pa. 226, 233, 51 A.2d 719, 723 (1947) (citations omitted).

At the time of the conveyance in the instant case the parties assuming the existence of a binding obligation, *see* text supra, agreed to limit the use of the land to "industrial development purposes" as defined in the *Articles of Agreement* and the *Articles of Incorporation Purpose Clause*. *See* note 2 supra. It is obvious that "industrial development purposes" is language of variable meaning, and absent some special meaning [12] of the words to the

12. Of course, the "special meaning of the words to the parties" is purportedly contained in the *Articles of Agreement* and the *Articles of Incorporation Purpose Clause*. *See* note 2 supra. It is obvious that the language in both of these documents is also language of variable meaning.

parties, "the standard of interpretation to be applied [to a contract] is the meaning that would be attached by a reasonably intelligent person, *acquainted with all the operative usages, and knowing all the circumstances prior to and contemporaneous with the making of the contract . . . ."* *Wilkes-Barre Township School District v. Corgan,* 403 Pa. 383, 388, 170 A.2d 97, 99 (1961) (emphasis original) (citations omitted).

We are of the opinion that the instant case necessitates a *full inquiry* into the facts in order for the lower court to properly invoke and apply the aforementioned cardinal principles of construction, and, ultimately, in order for us to properly assess the lower court's disposition of this case, whatever that disposition may be. "In the event of a dispute over the meaning of a term in a contract, a party is entitled to submit evidence concerning the proper interpretation under all of the circumstances. *Aughenbaugh v. North American Refractories Co.,* 426 Pa. 211, 231 A.2d 173 (1967)." *Trapuzzano v. Lorish,* 467 Pa. ——, ——, 354 A.2d 534, 536 (1976) (Filed April 7, 1976).[13] Specifically, but without limitation as to what the parties may factually develop, we believe a full inquiry into the facts is required in three areas.

## I

Palmerton's affidavit in opposition to Bollinger Brothers' motion for summary judgment contains the following:

"B. Defendant believes and avers that said right-of-way grant is not inconsistent with potential industrial use purposes on the premises, inasmuch as the area beneath the power transmission lines may be used

13. *Trapuzzano v. Lorish,* 467 Pa. ——, ——, 354 A.2d 534, 536 (1976) (Filed April 7, 1976) involved a judgment on the pleadings. However, the same principle has been applied in cases involving summary judgment procedure. *See Schacter v. Albert,* 212 Pa. Super. 58, 239 A.2d 841 (1968).

for a great variety of supportive industrial purposes, e. g., parking areas, storage areas, driveways, erosion control areas and other necessary uses not involving the erection of building improvements thereunder." Printed Record at 36a.

"There is no canon against using *common sense* in construing a contract, so that a strained construction does not defeat its intent and purpose." *Philadelphia v. N. Snellenburg & Co.*, 163 Pa.Super.Ct. 507, 513, 63 A.2d 480, 484, *allocatur refused,* 163 Pa.Super. *xxv* (1949) (emphasis added) (citation omitted). It is a matter of common sense that an "industrial development" use restriction does not contemplate that every square foot of the 16-acre tract of land shall be covered with building improvements. An industrial park would entail a number of supportive areas. As Palmerton's affidavit points out, there is a question as to whether the area beneath the power transmission lines may be used for such supportive industrial purposes. In its brief on appeal, Bollinger Brothers argues that "[a]ny use of the land in the area of the right-of-way would now be subject to the express agreement of the Pennsylvania Power & Light Company, and any use thereof would be severely hampered, both because of the necessity for prior permission from the Pennsylvania Power and Light Company and because of the danger inherent in constructing under high tension electric lines." Brief for Appellee at 11. This argument, in itself raises factual questions. There is no showing that the necessary permission from the Pennsylvania Power and Light Company would not be forthcoming, and there has been no showing that the "inherent danger" would preclude the construction, for example, of a parking area beneath the power transmission line.

## II

■ Palmerton's affidavit further states that:

"C. There is a genuine issue of material fact as to whether or not the electric transmission line, passing over the right-of-way in question, does, in fact, supply electric power to industry in the Palmerton trade area . . . ." Printed Record at 36a.

Without expressing an opinion on the disposition of this case if, *in fact,* the power transmission line does supply electric power to industry in the Palmerton trade area, we are of the opinion that this issue is relevant to the interpretation of the agreement between the parties, and we believe that Palmerton should not be deprived of an opportunity to establish this point and then develop a contention that the use of the land in this way was within the intention of the parties at the time of execution of the agreement. Again, we are assuming the existence of a binding obligation.

## III

■ Lastly, Palmerton's affidavit contains the following:

"E. There is a genuine issue of material fact as to whether said right-of-way conveyance is in furtherance of and within the purposes and power of Defendant's Articles of Incorporation, inasmuch as the proceeds received by Defendant for said conveyance is earmarked and available to defray the community's local share in industrial development financing for future industry to be located in the industrial park. In addition, said moneys are available for the purchase of additional land for industrial development . . . ." Printed Record at 37a.

We also perceive that the issues presented in this part of Palmerton's affidavit require a full factual inquiry. It is

not inconceivable to us that the use of the proceeds of the right-of-way conveyance could be held to be a use of the land, albeit an indirect "use", for "industrial development purposes," within the intention of parties.

For all of the aforementioned reasons, this case is not one to be decided on a motion for summary judgment.

Order reversed and the record remanded for proceedings consistent with this opinion.