437 A.2d 23

COMMUNITY MEDICAL SERVICES OF CLEARFIELD INC., and American Medical Affiliates, a Corporation, Appellants,

v.

LOCAL 2665, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, an Unincorporated Association, and American Federation of State, County and Municipal Employees, AFL–CIO, a National Unincorporated Association, and American Federation of State, County and Municipal Employees, Council 13, AFL–CIO, a State Unincorporated Association and District Council 85 of the American Federation of State, County and Municipal Employees, AFL–CIO.

Superior Court of Pennsylvania.

Submitted May 22, 1981.

Filed Nov. 13, 1981.

William H. Bishop, Philadelphia, for appellants.
Jonathan Walters, Philadelphia, for appellees.

Before CERCONE, President Judge, and MONTGOMERY and VAN der VOORT, JJ.

CERCONE, President Judge:

We consider today an order denying appellants' motion for summary judgment, but granting appellees' like motion, in a libel action instituted by appellants for allegedly defamatory statements contained in two strike bulletins published and circulated by appellees in connection with a labor dispute. We now affirm.

Appellants operate the Clear Haven Nursing Home in Clearfield. The facility was originally run by the County of Clearfield but the County relinquished its responsibility for it to appellants. Appellees are various affiliated labor organizations which represent the non-professional staff at the nursing home in collective bargaining. When the collective bargaining agreement which covers the non-professional employees at the nursing home expired on December 31, 1976 a labor dispute arose and the workers went out on strike. Picket lines were set up outside the nursing and on January 11, 1977 the Clearfield County court issued an *ex parte* temporary restraining order prohibiting mass picketing and ordering the striking employees back to work. The next day a consent order issued which dissolved the back-to-work order but limited the number of permissible pickets. A new collective bargaining agreement was eventually reached in April of 1977, but not before the publication of the two allegedly defamatory strike bulletins. Appellants filed the instant action seeking damages for the alleged libel. Appellees counterclaimed seeking damages for malicious abuse of process, alleging as the basis for the claim the *ex parte* temporary restraining order issued January 11. Both sides eventually moved for summary judgment on the original action as well as the counterclaim. In addition A.F.S.C.M.E. International and A.F.S.C.M.E. Council 13 moved for summary judgment claiming they could not be held responsible

for the local union's actions.[1]  The court ruled in favor of the unions on the libel action and in favor of the employer-appellant on the malicious abuse of process counterclaim. From the order granting appellees' motion for summary judgment on the original claim the employer-appellants bring this appeal.[2]

## I.

We are presented today with no ordinary libel case. The fact that the alleged libel arose in connection with a labor dispute gives rise to considerations of federal law not normally to be found in such actions. In *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) the United States Supreme Court held that in order for a public official to recover damages for libel the official must prove that the defendant published the defamatory statement with reckless disregard of, or knowledge of its falsity. See also *Fox v. Kahn*, 421 Pa. 563, 221 A.2d 181 (1966). In *Linn v. United Plant Guard Workers of America*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Court adopted the *New York Times* "actual malice" standard for use in defamation cases arising out of labor disputes noting, however, that the use of that standard was not constitutionally compelled. *Linn* held that the National Labor-Management Relations Act (NLRA), as amended, 61 Stat. 136, 29 U.S.C. § 141 *et seq.*, pre-empted the power of the state courts to award state remedies in labor dispute defamation cases unless the plaintiff pleads and proves both "actual malice" and damages, even if the alleged defamatory language would be actionable *per se* under state tort law. *Cf. Old Dominion Branch No. 946, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct.

1.  The court below did not reach this motion since it had already ruled that as a matter of law no actionable defamation had taken place and that neither Council 13, nor the International, nor any of the other defendants could be held liable.

2.  The unions have filed no appeal with respect to the entry of summary judgment on the counterclaim for appellants.

773, 3 L.Ed.2d 775 (1959). We are asked to determine the correctness of the lower court's grant of summary judgment for the defendants-appellees in a case where *Linn* controls the cause of action.

■ Ordinarily, summary judgment should only be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Pa.R.C.P. 1035. And see *Davis v. Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970); *Bollinger v. Palmerton Area Com. Endeavor, Inc.*, 241 Pa. Superior Ct. 341, 361 A.2d 676 (1976). Furthermore, summary judgment is only proper in cases which are clear and free from doubt as to the existence of a disputed factual question. See *Mallesky v. Stevens*, 427 Pa. 352, 235 A.2d 154 (1967); *Toth v. Philadelphia*, 213 Pa. Superior Ct. 282, 247 A.2d 629 (1968). In ruling on a motion for summary judgment the court must accept as true all well-pleaded facts in the non-moving party's pleadings, as well as admissions on file, giving to them the benefit of all reasonable inferences to be drawn therefrom. See *Hankin v. Mintz*, 276 Pa. Superior Ct. 538, 419 A.2d 588 (1980); *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa. Superior Ct. 198, 280 A.2d 570 (1971). The record as a whole should be examined in the light most favorable to the party opposing the motion and all doubts as to the existence of a genuine issue about a material fact must be resolved in that party's favor, that is, against the entry of summary judgment. See *Bowman v. Sears, Roebuck & Co.*, 245 Pa. Superior Ct. 530, 369 A.2d 754 (1976); *Husak v. Berkel, Inc.*, 234 Pa. Superior Ct. 452, 341 A.2d 174 (1975); *Schachter v. Albert*, 212 Pa. Superior Ct. 58, 239 A.2d 841 (1968). And see *Hankin v. Mintz, supra; Ritmanich v. Jonnel Enterprises, Inc., supra.* In disposing of such a motion the court's function is not to decide issues of fact, but solely to determine whether there are material issues of fact to be decided. See *Hankin v. Mintz, supra; Ritmanich v. Jonnel Enterprises, Inc., supra.*

■ This would appear to be the first case to consider summary judgment in a labor-related libel case in the Commonwealth. There have been at least two recent cases, however, which considered a lower court's grant of summary judgment in connection with "public official" defamation actions. We refer to *Curran v. Philadelphia Newspapers, Inc.*, 261 Pa. Superior Ct. 118, 395 A.2d 1342 (1978) (affirmed by an equally divided Court) [3] and *Brophy v. Philadelphia Newspapers, Inc.*, 281 Pa. Superior Ct. 588, 422 A.2d 625 (1980).[4] *Curran* and *Brophy* figure highly in the instant discussion because of what they have to say about the summary disposition of *New York Times* standard defamation cases. After careful reading of these two cases it becomes clear that this Court is of the opinion that the summary disposition of *New York Times* defamation cases differs in no way from the manner of disposing of other cases in like procedural posture.[5] Nonetheless, for purposes

**3.** *Curran* was affirmed by an equally divided Court. Strictly speaking neither opinion filed in that case carries the weight of precedent. We stress that we do not rely on *Curran* as precedent.

In *Curran*, Judge Spaeth wrote the opinion in support of affirmance and was joined therein by Judge Van der Voort. Judge Cercone, now President Judge, concurred in the result reached by Judges Spaeth and Van der Voort.

Judge Hester authored the opinion in support of reversal and was joined therein by then President Judge Jacobs and Judge Price. Judge Hester's opinion does not speak to the issue of the proper method of deciding motions for summary judgment in *New York Times* defamation cases other than to say that where a material fact remains in dispute such a disposition is improper.

**4.** Judge Cavanaugh wrote the lead opinion in *Brophy*. Judge Spaeth wrote a concurring opinion. Judge Hester dissented. Unlike *Curran, Brophy* does have the weight of precedent.

**5.** Judge Spaeth's opinion in support of affirmance in *Curran* extensively discusses the practical and procedural aspects as well as the propriety of the summary disposition of public figure defamation cases. In *Curran* Judge Spaeth relied in part on Judge J. Skelly Wright's concurring opinion in a case before the D.C. Circuit Court of Appeals. See *Wasserman v. Time, Inc.*, 138 U.S.App.D.C. 7, 424 F.2d 920, *cert. denied*, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970). Judge Wright's *Wasserman* concurrence caused no small discussion in the federal courts, see *Nader v. deToledano*, 408 A.2d 31 (D.C.App.1979), and it is not surprising to see that Judge Cavanaugh's opinion in *Brophy* takes issue with the same points in Judge

of clarification we quote two passages from *Nader v. deToledano*, 408 A.2d 31 (D.C.App.1978). The first deals with motions for summary judgment and burdens of proof.

A party satisfies his burden of production with respect to an issue material to his case when he has made out a "prima facie" case as to such issue—*i. e.*, a sufficient quantum of evidence which, if credited, would permit judgment in his favor unless contradicted by credible evidence offered by the opposing party. *Bailey v. Zlotnick*, 77 U.S.App.D.C. 84, 85, 133 F.2d 35, 36 (1942) (motion for directed verdict). The establishment of a prima facie case by the party bearing the burden of persuasion as to an issue shifts the burden of producing contradictory evidence to the adverse party. The burden of evidentiary production shifts from side to side during the course of the trial as each party introduces evidence sufficient to satisfy the test. *See generally,* 31A C.J.S. *Evidence, supra,* § 110 at 184–88.

The same rules are applicable in a motion for summary judgment. On such motion the well-settled rule is that the moving party bears the burden of proving that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law. The movant may discharge his burden of proof by demonstrating that if the case proceeded to trial his opponent could produce

Spaeth's *Curran* opinion as the *Nader v. deToledano* court took with Judge Wright's *Wasserman* concurrence.

Judge Spaeth's opinion in support of affirmance in *Curran*, based insofar as it is on Judge Wright's *Wasserman* concurrence, gives the impression that the summary disposition of *New York Times* defamation cases differs from the summary judgment norm. Indeed, Judge Cavanaugh devoted a large portion of his lead opinion in *Brophy* to the refutation of just that proposition. Judge Spaeth, in his concurring opinion in *Brophy*, went to equal lengths to elucidate his remarks in *Curran*: ("[Judge Cavanaugh's] interpretation of *Curran* is mistaken. I accept responsibility for the mistake since I wrote the statement . . .; plainly, it was not as clear as it should have been. Let me therefore try again." *Brophy v. Philadelphia Newspapers, Inc.*, 281 Pa. Superior Ct. at 605, 422 A.2d at 634. (Emphasis in original)). From Judge Spaeth's concurrence in *Brophy* any doubt as to the appropriate method of disposition of these cases has been resolved.

no competent evidence to support a contrary position. 10 Wright & Miller, [Federal Practice and Procedure: Civil] § 2727, at 531. A prima facie showing by the movant for summary judgment—i. e., the production of enough evidence to demonstrate such party's entitlement to a judgment if evidence were uncontroverted at trial—shifts the burden of producing evidence to the party opposing the motion. Summary judgment should be granted to the movant unless the opposing party offers competent evidence admissible at trial showing that there is a genuine issue as to a material fact. *Id.* at 536–37.

Once the movant has made the requisite showing,

the issue of material fact required by Rule 56(c) to be present to entitle (the opposing) party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. [*First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).]

In practical effect, this rule requires more of the opposing party than the mere demonstration of disputed factual issues. *Bushie v. Stenocord Corp.*, 460 F.2d 116, 119 (9th Cir. 1972). "[T]he showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law." *McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968). A plaintiff opposing a defense motion for summary judgment, in order to make the evidentiary showing that will permit him to advance to trial must "show that he has a plausible ground for the maintenance of the cause of action." (Citations omitted) *Nader v. deToledano*, 408 A.2d at 48. The second passage clearly describes the standard to be applied in these cases and the manner of its application:

The *standard* against which the evidence must be examined is that of *New York Times* and its progeny. But the manner in which the evidence is to be examined in the light of that standard is the same as in all other cases in which it is claimed that a case should not go to the jury. If the evidence, so considered, measures up to the *New York Times* standard, the case is one for the jury, and it is error to grant a directed verdict, as the trial judge did in this case. [*Guam Federation of Teachers, Local 1581 v. Ysrael,* 492 F.2d 438, 441 (9th Cir.), *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974)].

The import of the *Guam* decision is that the usual procedural rules should govern summary judgment and that a libel plaintiff need not prove malice twice—first to the judge, then to the jury. According to this view the function of the trial court on such a motion is not to weigh proof and make independent findings, but rather to determine whether or not the plaintiff has demonstrated a genuine issue of material fact from which a jury, using the appropriate burden of proof—"clear and convincing" evidence—*could find* publication of a defamatory falsehood with actual malice.

Id. at 47. (Emphasis in original).

Having delineated the law applicable to this case we turn now to a consideration of its merits.

## II.

The question put is whether appellants can produce that quantum of evidence and reasonable inferences which would allow a jury to conclude that appellees published the alleged defamatory remarks with actual malice as that term has been defined in *New York Times* and applied to labor cases in *Linn.*

There were two strike bulletins published by appellees which contained allegedly defamatory matter. The first bulletin was prepared by one John Harvey. At the time of the strike he was the public affairs representative for A.F.S. C.M.E. International. The allegedly defamatory statements

contained in this strike bulletin issued January 19, 1977 read:

> Affiliates (AMA), the Jenkintown-based firm operated the home, went on record this week advocating 'bloodshed' unless AFSCME Local 2655 dismantles its legally-installed sanctioned picket line. The *outside* firm installed company goons, AMA-paid security guards, on the lines to further threaten strikers...
>
> *By keeping wages at poverty levels and skimping on basic supplies, AMA saves enough money to keep its private jet in the sky and its corporate offices well appointed in Jenkintown...*
>
> When bargaining gets tough, AMA jets back to the warmth of its Jenkintown corporate offices, leaving local folks out in the cold and *residents lacking proper care and love.*

(Emphasis added to show language specifically alleged to be defamatory). On January 25, 1977 a second strike bulletin was published. It had been prepared by James Duffy, an employee of District Council 85. The allegedly defamatory language contained therein reads:

> Meanwhile, local visitors to the home report elderly patients being restrained in bed for days on end, wards entirely devoid of any staff and a cold, callous attitude displayed by AMA management.

In order to establish the background for the writing of these bulletins several persons were apparently deposed.[6] It is on these depositions that the motions for summary

6. The record transmitted to us by the lower court contains only the deposition of John Harvey. The docket lists no other depositions filed. The reproduced record, to the contrary, contains portions of the depositions of James Duffy, Florence Litz, and of appellants' employee, Ronald P. Knox. It is impossible at this juncture to tell whether the lower court considered all four of these depositions or whether it saw only Harvey's. For the purposes of judicial economy we will assume that the court viewed all the depositions; we do so because it is clear that even based on the addition of the depositions which the court may not have considered it could not reasonably have found in appellants' favor.

judgment are based. The most that can be gleaned from John Harvey's deposition which might reasonably support appellants' claim of actual malice is that Harvey had no personal knowledge of conditions on the other side of the picket line or of working conditions before the troubles began. He testified that he met with the striking workers and discussed what they wanted to put in the strike bulletin. This information on patient care and worker wages came from them. He did remember specifically having spoken with Litz and Duffy but could recall no other names.

James Duffy's deposition is even more damaging to appellants' case than Harvey's. Duffy testified that he spoke with numerous union members, including Florence Litz. Each union member confirmed generally the information provided by the others. Florence Litz had apparently spoken with the relatives of several of the nursing home's patients and she related the information to Duffy. Duffy testified that he then confirmed Litz's reports by speaking with these relatives himself. Furthermore, he testified that the state health inspector informed him that she gave appellants advance notice of impending inspections, which were supposed to be unannounced. He also sated that before each inspection more non-union workers would appear at the nursing home than were normally present and that they would depart afterward. Duffy also claimed to have spoken with some of the workers who had been inside the nursing home during the strike and had had the opportunity to view conditions themselves. Although he did on one occasion enter the nursing home he was not permitted to see the patient-care areas. Florence Litz testified to her personal knowledge about wages and working conditions. She also stated that she had spoken with the friends and relatives of several of the patients and that those persons had complained to her about the quality of care during the strike.

Appellants point to the fact that Duffy could not recall which patients his informants told him were being mistreat-

ed or inadequately cared for as indicative of his reckless disregard for the alleged falsehoods in the strike bulletins. The most that can be inferred from this lapse of memory is that he had forgotten the patients' names; afterall, he was unfamiliar with them because he was not one of appellants' employees. Appellants also assert that Duffy knew the Pennsylvania Health Department had not found the home understaffed during inspections. In this appellants are correct, but Duffy also testified that he had been told by the state health inspector that the inspections were not unannounced. He also testified that he had personal knowledge that extra non-union workers were brought in in advance of these announced inspections and sent home afterwards. Appellants have not demonstrated any evidence which might somehow counter Duffy's testimony about the appearance of extra non-union workers, or that he acted in reckless disregard of the falsity of the impression created by their appearance in conjunction with the state inspections. In short, appellants have entirely failed to prove their case. They are incapable of producing sufficient evidence to demonstrate that there is a genuine issue of actual malice or that a jury might reasonably find by clear and convincing evidence that appellees acted with actual malice when they published the disputed strike bulletins.

Thus it is clear that appellants have not met their burden of responding to the summary judgment motion by demonstrating the existence of evidence and reasonable inferences sufficient to sustain a verdict in their favor, were the case to go to trial. Based on this record the court was correct in granting summary judgment on the original claim for appellees.

Affirmed.