## Grund v. The Bethlehem Globe Publishing Company

*B. Ryland Wiggs,* for plaintiffs.
*J. Stephen Kreglow,* for defendants.

WILLIAMS, *P.J.*, September 20, 1982—This case comes before us on motions for summary judgment filed by defendants Bethlehem Globe Publishing Company (hereinafter Globe Times) and E. A. Geer (hereinafter Geer). The facts relevant to our consideration are as follows.

Plaintiffs are three minors and their parents who jointly instituted this libel action against defendants. Plaintiffs advanced various theories of recovery in the 22 counts of their complaint, two of which are presently before us. The remainder were dismissed in an opinion of this court, Freedberg, J., dated February 2, 1982.

On August 16, 1980, the Globe Times published an article detailing the arrest of the three minor plaintiffs in connection with at least 70 criminal offenses in the Bethlehem area; those offenses included robbery, burglary and purse theft. The article contained the following passage which is the focal point of plaintiffs' dispute with the Globe Times:

The largest take reported to the Bethlehem Township police came from Anthony Ragni of 2955 Oakland Road. He said $10,320 worth of jewelry and $700 in cash was taken. Ragni operates a barber shop in Bethlehem. That happened December 3, 1979.

The account of the Ragni burglary was but one of many of the offenses enumerated in the article. The minor plaintiffs admitted committing most of the offenses, were unable to recall others, and specifically disclaimed involvement in the Ragni burglary. Plaintiffs claim that the published article at least infers involvement in the Ragni burglary and that they therefore have been defamed.

Plaintiffs' second theory of recovery is for allegedly defamatory statements contained in a "Letter to the Editor" written by defendant Geer and published by the Globe Times on August 20, 1980. The letter states that the August 16, 1980, article compelled Geer to make "some comment and expression of shock, disbelief and dismay." The letter further stated that "many people must wonder" how the parents remained ignorant to their child's criminal activities "or were they sharing the loot?" The letter finally expresses Geer's desire to see these "thieves" make restitution. Parent-plaintiffs allege that they have been defamed by the Geer letter.

We turn first to the standard of review governing our consideration of the motion for summary judgment. It is beyond dispute that summary judgment may be entered only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law: Pa.R.C.P. 1035(b); Bollinger v. Palmerton Area Communities Endeavor, Inc., 241 Pa. Superior Ct. 341, 361 A. 2d 676 (1976). The court must accept as true all the well-pleaded facts in the non-moving party's pleadings, giving such party the benefit of all reasonable inferences to be drawn therefrom: Just v. Sons of Italy Hall, 240 Pa.

Superior Ct. 416, 368 A. 2d 308 (1976). Summary judgment should be granted only in the clearest of cases where there is not the least doubt as to the absence of any triable issue of material fact: Hankin v. Mintz, 276 Pa. Superior Ct. 538, 419 A. 2d 588 (1980).

Defendants argue that since this is a case involving First Amendment freedoms, summary judgment is a "preferred procedure." Defendants assert that in the ordinary case the court will refrain from entering summary judgment if there is the least doubt, but in a case involving the First Amendment the court is not so constrained. See Curran v. Philadelphia Newspapers, Inc., 261 Pa. Superior Ct. 118, 395 A. 2d 1342 (1978); Brophy v. Philadelphia Newspapers, Inc., 281 Pa. Superior Ct. 588, 608, 422 A. 2d 625, 636 (1980) (Spaeth, J., concurring).

After careful reading of these two cases, this court is of the opinion that the summary disposition of private plaintiff defamation cases is in no way different from the disposition of other cases in like procedural posture. Both Curran and Brophy discussed the propriety of summary judgment in *public figure* defamation cases. Recent opinions clearly limit the application of summary judgment as a "preferred procedure" to cases involving public figure plaintiffs. See, e.g., Community Medical Services v. Local 2665, AFSCME, 292 Pa. Superior Ct. 238, 437 A. 2d 23 (1981). Despite defendants' contention that the minor plaintiffs have achieved the status of public figures due to their widespread criminal activity, we hold that they are private persons. A person is a public figure within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, (1964), and progeny when he voluntarily assumes a role of special prominence in the affairs of society,

occupies a position of power and influence, or thrusts himself into the forefront of public controversies in order to influence their resolution: Gertz v. Robert Welsh, Inc., 418 U.S. 323, (1974); see also Wolston v. Reader's Digest Assn., Inc., 433 U.S. 157, (1979). While it is possible for one to become a public figure involuntarily, such instances are extremely rare. Because we do not believe that the minor plaintiffs' widespread criminal activity is sufficient to render them public figures, we treat them as private persons and therefore examine the record in light of the usual standard applied in cases in which it is claimed that summary judgment is appropriate.

With these principles in mind, we turn now to consideration of the merits of defendants' motion. Because the various issues presented are complex, we treat each defendant's motion separately for the purpose of clarity.

## I. DEFENDANT GEER

In the first instance, it is for the trial court to determine whether the statement in question is capable of defamatory meaning. If the trial court determines that a given statement is capable of such meaning, it is then the function of the jury to determine if it was so understood by the readers: Corabi v. Curtis Publishing Company, 441 Pa. 432, 273 A. 2d 899 (1971). There is therefore an issue of material fact presentable to a jury only if we find that Geer's letter to the editor is capable of defamatory meaning. For the reasons hereinafter stated, we hold that the Geer letter is, as a matter of law, not capable of defamatory meaning.

Under Pennsylvania law, a plaintiff must prove the defamatory character of a communication: 42

Pa.C.S.A. §8343(a). A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him: Corabi v. Curtis Publishing Co., 441 Pa. at 442, 273 A. 2d at 904. The expression of an opinion, without more, is not actionable as libel. Likewise, the mere fact that a statement is annoying or embarrassing is insufficient to constitute libel: Bogash v. Elkins, 405 Pa. 137, 176 A. 2d 677 (1962); Beckman v. Dunn, 276 Pa. Superior Ct. 527, 419 A. 2d 586 (1980). The allegedly defamed party must demonstrate that the communicated opinion may "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Id. at 535, 419 A. 2d at 587.

Examining the Geer letter in a light most favorable to the parent plaintiffs, we conclude that, at best, it can only be read to express the opinion of its author—that the parents of these minors shared the spoils of their criminal exploits. More realistically, the letter did little more than raise a question which was most likely pondered by the readers of the Globe Times' original report of the crimes. Geer in no way intimated that she possessed additional facts to substantiate her opinion.

While we hold that the Geer letter is incapable of defamatory meaning, we are fully aware that false imputations of criminal activity may, in some instances, constitute defamation: Corabi v. Curtis Publishing Co., 441 Pa. at 447, 273 A. 2d at 908. It is our opinion that the Geer letter falls short of such imputation. Geer's commentary relates no more than mere conjecture and cannot fairly be read to inferentially denounce the parent plaintiffs as accomplices to the crimes. To hold this commentary libelous would deter open expression in public

forums and seriously impair the exercise of First Amendment rights, a result which this court cannot countenance.

For the foregoing reasons, we conclude that, as a matter of law, the Geer letter is not capable of defamatory meaning. Since no actionable defamation has occurred, defendant Geer is entitled to summary judgment.

## II. DEFENDANT GLOBE TIMES

As in our consideration of defendant Geer's motion for summary judgment, we must first determine whether the August 16, 1980, article is capable of defamatory meaning. We hold that the article is capable of defamatory meaning because it conveys to the average reader imputations of involvement in or actual guilt of the reported crimes. Such a report is capable of damaging the reputation of the minor plaintiffs, lowering them in the estimation of the community and deterring third parties from association with them. See Cosgrove S. & C. Shop, Inc. v. Pane, 408 Pa. 314, 182 A. 2d 751 (1962); Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A. 2d 472 (1960).

Having determined the article to be capable of defamatory meaning, it is then for the jury to determine whether it was so understood by its readers: Corabi v. Curtis Publishing Co., supra. A question which is proper for submission to a jury does not, however, necessarily preclude the granting of summary judgment. We must first determine whether there is sufficient evidence which would require a jury to resolve a disputed issue.

Summary judgment is to be granted to the moving party unless the opposing party offers competent evidence admissible at trial showing that there

is a genuine issue as to a material fact. A "genuine issue for trial" is predicated upon the existence of a viable legal theory asserted by the party opposing the motion showing he has a "plausible ground for the maintenance of the cause of action." Community Medical Services v. Local 2665, AFSCME, 292 Pa. Superior Ct. at 245, 437 A. 2d at 27, quoting Nader v. DeToledano, 408 A. 2d 31 (D.C. App. 1978). In order to successfully oppose defendant's motion, therefore, plaintiffs must demonstrate the existence of evidence and reasonable inferences sufficient to sustain a verdict in their favor were we to allow the case to proceed to trial. Community Medical Services v. Local 2665, AFSCME, 292 Pa. Superior Ct. at 249, 437 A. 2d at 29.

Initially, it is important to note that the Globe Times published the article in question under the protection of a qualified privilege. This privilege is set forth in section 611 of the Restatement, 2d, Torts (1977) which provides:

§611. Report of Official Proceeding in a Public Meeting.

The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

An arrest by a police officer is an official action and a report of that arrest or of the charge of crime is within the privilege of section 611: Restatement, 2d, Torts §611, Comment h.

Although section 611 has not been expressly adopted in this Commonwealth, our Supreme Court "has not hesitated to adopt" sections of the Restatement (Second) of Torts: Gilbert v. Kor-

vette's, Inc., 457 Pa. 602, 611 n. 26, 327 A. 2d 94, 100 n. 25 (1974). See also Hanish v. Westinghouse Broadcasting Co., 487 F. Supp. 397 (E.D. Pa. 1980) (assuming without elaboration that section 611 of the Restatement, 2d, represents the law of Pennsylvania). The Globe Times' article reporting the arrests of the minor plaintiffs in connection with the enumerated crimes is clearly within the purview of this privilege.

Once defendant has established the existence of a privilege, the burden then shifts to plaintiff to prove abuse of that privilege: Corabi v. Curtis Publishing Co., 441 Pa. at 452-3, 273 A. 2d at 909. Plaintiff carries the burden of establishing abuse by showing that the publication was actuated by malice or negligence: Beckman v. Dunn, 276 Pa. Superior Ct. at 537, 419 A. 2d at 588. Whether plaintiffs here must show malice or negligence in order to establish abuse of the privilege is our next inquiry.

The common law rule of strict liability for publication of a defamatory falsehood was abrogated in New York Times Co. v. Sullivan, supra, where the court held that in defamation actions the First Amendment, in conjunction with the Fourteenth, required a public official to prove an allegedly defamatory statement was made with "actual malice." The court defined "actual malice" as knowledge that the statement was false or reckless disregard as to whether it was false or not. In Curtis Publishing Co. v. Butts, 388 U.S. 130, (1967), the court extended New York Times v. Sullivan to defamation actions brought by public figures as well as public officials. Finally, in Gertz v. Robert Welsh, Inc., supra, the court allowed the states to define for themselves the appropriate standard of liability in a private individual defamation action,

so long as the standard was not liability without fault. Gertz rejected the standard espoused in Rosenbloom v. Metromedia, 403 U.S. 29, (1971), which required a private figure to prove actual malice where the published statements concerned matters of public interest. Gertz, therefore, stands for the proposition that a state *may* constitutionally permit a private person to recover in defamation upon a showing of mere negligence.

In the interim between Rosenbloom and Gertz, the Supreme Court of Pennsylvania held that in a libel action brought by a private individual against a media defendant, plaintiff could recover only upon a showing of "actual malice." Matus v. Triangle Publications, Inc., 445 Pa. 384, 286 A. 2d 357 (1971), cert. denied, 408 U.S. 930, (1972). The court in Matus believed itself constitutionally compelled to accept the standard set forth in Rosenbloom. It held: "[W]e adopt as binding on us the holding of the plurality opinion in Rosenbloom. . . . " Matus v. Triangle Publications, Inc., 445 Pa. at 395, 286 A. 2d at 363 (footnote omitted). Thereafter, Gertz allowed the states to adopt the applicable standard, thereby removing this constitutional constraint.

Our research reveals no subsequent decision of the Pennsylvania Supreme Court addressing the question of whether Matus remains viable after Gertz. There are, however, several pertinent federal court decisions. In Mathis v. Philadelphia Newspapers Co., Inc., 455 F. Supp. 406 (E.D. Pa. 1978), the court was faced with the question of whether Matus survived Gertz and concluded that it had not. The court stated: "I see no reason to believe that the Supreme Court of Pennsylvania, which is now free to abandon the Rosenbloom 'actual malice' standard in a 'private figure' case, will

choose to retain that standard." Id. at 412. Finding no aspect of Pennsylvania law to support such a prediction, the court concluded that "the Matus decision is no longer good law and that a 'private figure' defamation plaintiff may recover under Pennsylvania law based upon a showing of negligence." Id. (footnote omitted).

The reasoning and conclusion of the Mathis decision has been endorsed by the Federal District courts and the Third Circuit. See Medico v. Time, Inc., 509 F. Supp. 268 (E.D. Pa. 1980), aff'd 643 F. 2d 134 (3d Cir. 1981) (concluding that the Supreme Court of Pennsylvania, in light of Gertz, will retreat from the position taken in Matus); Steaks Unlimited, Inc. v. Deaner, 623 F. 2d 264 (3d Cir. 1980); Marcone v. Penthouse International, Ltd., 533 F. Supp. 353 (E.D. Pa. 1982). But see Lorentz v. Westinghouse Electric Corp., 472 F. Supp. 946 (W.D. Pa. 1979).

After a close reading of these cases, and careful scrutiny of Matus in light of Gertz, we agree that the Supreme Court of Pennsylvania would no longer adhere to the Matus actual malice standard. We would adopt this standard and allow plaintiff to proceed to trial based upon a showing of negligence were we not constrained by an earlier ruling of this court. In Rutt v. Bethlehem Globe Publishing Co., et al., no. 755 May term, 1978, February 23, 1981, the Honorable Richard D. Grifo, J. declined to abandon the actual malice standard set forth in Matus. He held Matus controlling and granted defendant's motion for summary judgment. The appeal from that ruling is presently pending before the Superior Court. Absent specific binding authority to the contrary, we accept the standard adopted by Judge Grifo as the rule of this court. Accordingly, plaintiffs will be required to prove that defendant

published the article in question with actual malice.

An examination of the entire record in a light most favorable to plaintiffs leads us to conclude that they cannot prove that the Globe Times published the article knowing it was false or with reckless disregard as to its truth or falsity. Defendant's reporter, Mary Wagner, wrote the article based upon facts disclosed to her by an official police source—Detective Ralph Sadowski, the investigating officer, and Officer Herbert Goldfeder, the arresting officer. Insofar as the article related to plaintiffs, it was essentially a republication of a police report concerning the arrests and investigations of the crimes detailed therein. In short, the article was published under the privilege conferred by section 611 and there is no evidence indicating that the privilege has been abused.

It is well settled, however, that the section 611 privilege is limited to "accurate" reports of an official action or proceeding: Mathis v. Philadelphia Newspapers, Inc., 455 F. Supp. at 417. The qualified privilege is forfeited if the publisher abuses the "occasion" by exaggerated additions or embellishments to the account: Sciandra v. Lynett, 409 Pa. 595, 187 A. 2d 586 (1962). In the present case, the report related exactly what Miss Wagner had been told: that the three minor plaintiffs were "arrested in connection with" the enumerated crimes. That is in fact precisely what occurred. Whether the minor plaintiffs were actually the perpetrators of the enumerated crimes is immaterial since they were in fact arrested in connection therewith. The article neither states nor implies actual guilt of the Ragni burglary or the other affairs. Defendant's account, therefore, can be deemed "accurate" and well within the privilege accorded by section 611.

For the foregoing reasons we conclude that there is no triable issue of material fact and that defendant is entitled to summary judgment.

Wherefore, we enter the following

### ORDER

And now, September 20, 1982, summary judgment is entered in favor of defendants, E. A. Geer and The Bethlehem Globe Publishing Company.