511 A.2d 184

Francis L. MORGAN and Elizabeth Morgan, his
wife, Appellants,

v.

JOHNS–MANVILLE CORPORATION, Johns-Manville Sales
Corporation, Raybestos-Manhattan, Inc., Owens-Corning Fi-
berglass Corporation, Nicolet, Inc., GAF Corporation, Forty-
Eight Insulations, Inc., H.K. Porter Company, Inc., Southern
Textile Corporation, Pittsburgh Corning Corporation, Gar-
lock, Inc., North American Asbestos Company, Armstrong
World Industries, Inc., Amatex Corporation, Delaware Asbes-
tos and Rubber Company, Pacor, Inc., Fibreboard Corpora-
tion, Eagle-Picher Industries, Inc., J.P. Stevens & Company,
Celotex Corporation, Unarco Industries, Turner & Newall,
Ltd., Keene Corporation, and Owens-Illinois Glass Company.

Frank ALICE and Theresa Alice, Appellants,

v.

JOHNS–MANVILLE CORP., and Johns-Manville Sales Corp.,
and Raybestos-Manhattan, Inc., and Forty Eight Insulation
Inc., and Nicolet Industries, Inc., and Pittsburgh Corning
Corporation and Celotex Corporation and GAF Corporation
and Armstrong Cork Company and Fiberboard Corp. and J.P.
Stevens, Inc. and H.K. Porter Co., Inc. and Southern Asbestos
Company and Unarco Industries Inc. and Eagle-Picher Indus-
tries, Inc., and Amatex Corporation and Pacor, Inc., and
Delaware Asbestos & Rubber Co., and Owens-Corning Fiber-
glass Corp. and Owens-Illinois Fiberglass Corp.

Philip & Rose BAGIAN, Appellants,

v.

JOHNS–MANVILLE CORPORATION, Johns-Manville Sales
Corporation, Raymark Industries, Forty-Eight Industries,
H.K. Porter, Southern Asbestos, Nicolet Industries, Pittsburgh
Corning Corporation, Owens-Corning Corporation, G.A.F.
Corporation, Armstrong World Industries, Unarco Industries,
Eagle-Picher Industries, Delaware Asbestos and Rubber Fi-
breboard Corporation, Keene Corporation, Turner & Newall
Ltd., Certain-Teed U.S. Rubber Co., Inc., Pacor Industries,
Celotex Corporation, Amatex Corporation, Owens-Corning Fi-
berglas Asbestos Textile Institute, Termoid Company, Philip
Carey, Garlock, Industrial Products Division, Glen Alden,

Inc., Rapid American, Uni-Royal, Carolina Asbestos Co., J. Franklin Burke General Asbestos Co., Ruberoid Company, Keaseey Mattison Co., Asten Hill Manufacturing Co.

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed June 10, 1986.

60

Martin Greitzer, Philadelphia, for appellants.

Laurence H. Brown and Howell K. Rosenburg, Philadelphia, for appellants Bagian.

Before CAVANAUGH, WICKERSHAM and HOFFMAN, JJ.

HOFFMAN, Judge:

These are appeals from three orders of the lower court granting summary judgment in favor of appellees in three separate actions for personal injuries resulting from appellants' exposure to asbestos. Appellants contend that the court erred in holding that their claims are barred by the applicable two-year statute of limitations, 42 Pa.C.S.A. § 5524(2), and in thus granting summary judgment in favor of appellees. For the following reasons, we reverse the lower court's order in No. 972 PHL 84 and remand for further proceedings and affirm the orders entered in Nos. 173 PHL 84 and 1051 PHL 82.

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.Civ.P. 1035(b). When deciding whether to grant a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party, *Helinek v. Helinek*, 337 Pa. Superior Ct. 497, 502, 487 A.2d 369, 372 (1985), and view all of the evidence in a light most favorable to the non-moving party, *Rossi v. Pennsylvania State University*, 340 Pa. Superior Ct. 39, 48, 489 A.2d 828, 833 (1985). Moreover, summary judgment may be rendered only in cases that are free from doubt. *Id.*, 340 Pa. Superior Ct. at 44–45, 489 A.2d at 831; *Huffman v. Aetna Life and Casualty Co.*, 337 Pa. Superior Ct. 274, 277, 486 A.2d 1330, 1331 (1984).

In this Commonwealth, actions to recover damages for personal injuries are governed by a two-year statute of limitations. 42 Pa.C.S.A. § 5524(2). Thus, a plaintiff must commence an action within two years from the time he or she suffers an injury. For cases in which an injury is not readily detectable, our courts have developed the discovery rule to ameliorate the harsh results of the running of the statute of limitations before a plaintiff is aware of his or her injury. In *Cathcart v. Keene Industrial Insulation*, 324 Pa. Superior Ct. 123, 471 A.2d 493 (1984) (*en banc*), this

Court held that in "creeping disease" cases the statute of limitations begins to run when "the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."[1] *Id.*, 324 Pa.Superior Ct. at 136–37, 471 A.2d at 500 (footnote omitted). Under this test the statute of limitations begins to run even though the plaintiff lacks actual knowledge of an injury and its cause as long as he or she should have been so aware. *Id.* Moreover, a plaintiff is under a duty to use all reasonable diligence to be informed of facts upon which a potential action may be based. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

We note that whether a plaintiff has exercised due diligence in discovering an injury and its cause is usually a jury question. *DeMartino v. Albert Einstein Medical Center*, 313 Pa. Superior Ct. 492, 510, 460 A.2d 295, 299 (1983). Sometimes, however, " 'a case will arise where the facts will be undisputed and will lead unerringly to the conclusion that the length of time it took the plaintiff to discover the injury or its cause was unreasonable as a matter of law.' " *Id.*, 313 Pa.Superior Ct. at 510, 460 A.2d at 304, *quoting*

**1.** In *Cathcart*, an *en banc* panel of this Court modified the test that was announced in *Volpe v. Johns-Manville Corp.*, 4 Phila. 290 (Ct.C.P. 1977), *aff'd*, 323 Pa.Superior Ct. 130, 470 A.2d 164 (1983) (*en banc*). *Cathcart v. Keene Industrial Insulation, supra.* Under the *Volpe* test, the statute of limitations begins to run when the plaintiff has (1) knowledge of the injury, (2) knowledge of the operative cause of the injury, and (3) knowledge of the causative relationship between the injury and the operative conduct. *Cathcart, supra*, 324 Pa.Superior Ct. at 136, 471 A.2d at 500, *citing Volpe v. Johns-Manville Corp.*, 4 Phila. 290. Several panels of this Court have subsequently relied on the *Cathcart* test. *See Powell v. Johns-Manville Corp.*, 342 Pa.Superior Ct. 544, 548 n. 2, 493 A.2d 724, 726 n. 2 (1985) (*Volpe* test modified in *Cathcart*); *Wheeler v. Johns-Manville Corp.*, 342 Pa.Superior Ct. 473, 477, 493 A.2d 120, 122 (1985) (*Cathcart* should be followed because it is most recent holding of Court *en banc*); *Pastierik v. Duquesne Light Co.*, 341 Pa.Superior Ct. 329, 331–32, 491 A.2d 841, 842 (1985) (*per curiam*) (applying *Cathcart* test); *Price v. Johns-Manville Corp.*, 336 Pa.Superior Ct. 133, 136–37, 485 A.2d 466, 467 (1984) (*Cathcart* Court, *en banc*, modified *Volpe*); *Berardi v. Johns-Manville Corp.*, 334 Pa.Superior Ct. 36, 46–47, 482 A.2d 1067, 1073 (1984) (OLSZEWSKI, J., concurring) (*Cathcart* is controlling; it is most recent pronouncement by this Court on the issue).

*Anthony v. Koppers Co.*, 284 Pa. Superior Ct. 81, 110, 425 A.2d 428, 443 (1980). Thus, only in the latter instance would a grant of summary judgment be appropriate.

With these principles in mind, we now apply the *Cathcart* test to each of the three cases before us to determine whether summary judgment was properly granted.

### Philip and Rose Bagian

■ Appellant in No. 972 PHL 84, Philip Bagian, was employed as a pipefitter at the Philadelphia Naval Shipyard from 1941 until 1943 and from 1947 until his retirement in 1978. In 1972, Bagian obtained a report of his annual examination from the shipyard dispensary.[2] Under the heading "Significant findings," the report stated, "1. CHEST X-RAY: LOCALIZED PLEURAL THICKENING IN THE RIGHT HEMITHORAX." Bagian testified at his deposition that he did not pay much attention to this report and that he thought nothing was wrong. (Deposition of Philip Bagian, January 10, 1983 at 67).

In December, 1974, Bagian completed a questionnaire entitled "Health Inventory for Asbestos Workers and Handlers" in which he stated that he experienced shortness of breath upon climbing two flights of steps. (Memorandum of Law in Support of Appellee, the Celotex Corporation's, Motion for Summary Judgment on behalf of all Appellees, exhibit "D"). The notation "Routine Annual Surveillance" and the dispensary physician's signature appear at the end of the questionnaire. The same notation is written twice more at the bottom of the questionnaire followed by the dates "2/12/76" and "1/14/77". (*Id.* )

Beginning in 1971, Bagian became fairly knowledgeable about the health hazards of asbestos. At his deposition, he testified that "about" 1971 his supervisors began to tell the shipyard workers to be careful with asbestos and to require

2. Because the dispensary would send these reports only to a physician, Bagian instructed it to send the report to his brother-in-law, Dr. Sardarian, who was not, in fact, a physician. (Deposition of Philip Bagian, January 10, 1983 at 53–54).

the use of respirators to prevent the inhalation of asbestos fibers. Bagian was aware that asbestos exposure could lead to asbestosis, mesothelioma, and other forms of cancer. He also testified that they had "lost a few men," and that the men spoke of "breathing that damn junk all these years." (Deposition of Philip Bagian at 46–50).

In November, 1977, Bagian was examined by a private physician, Dr. Paisley, who informed him that he had asbestosis. In October, 1979, Bagian and his wife Rose filed this action against appellees asserting that his exposure to appellees' asbestos products caused him to contract certain diseases and injuries as set forth in his complaint and that his wife Rose has suffered from the loss of his society, services, and companionship. Appellees filed a motion for summary judgment contending that the Bagians' action was barred by the statute of limitations because they had discovered the injury and its cause more than two years before they commenced their lawsuit. On March 22, 1984, the lower court issued an order granting appellees' motion. The Bagians have appealed from that order.

The Bagians contend that the lower court erred in granting summary judgment because there are genuine issues of material fact concerning whether Philip Bagian knew or should have known of his injury and its cause prior to September, 1977. They argue first that Bagian did not know he was injured until he was examined by Dr. Paisley in November, 1977. Bagian stated that he received the chest x-ray report in 1972, but that he did not pay much attention to it because "it looked like nothing was wrong." (Deposition of Philip Bagian at 67). Furthermore, he argues that he had no reason to believe that pleural thickening was an injury because after he received the x-ray report nothing happened to illustrate the significance of that finding. He asserts that he continued to receive annual physical examinations and chest x-rays and was never informed of any medical problem. In addition, he points out that in 1976 and 1977, the dispensary physician noted "Routine Annual Surveillance" at the end of his health inventory

questionnaire and did not bring any significant findings to his attention.

The Bagians also argue that, although Philip Bagian knew that asbestos could cause asbestosis and cancer, he did not know that it could cause pleural thickening.

Appellees argue that summary judgment was properly granted because Bagian knew or should have known of his injury and its cause prior to September, 1977, and thus their suit is barred by the statute of limitations. They assert that Bagian had actual knowledge of an injury, pleural thickening, when he read the chest x-ray report in 1972. They also argue that Bagian's knowledge of the hazards of breathing asbestos fibers, his knowledge of his own pleural thickening, his position at the shipyard, and his intelligence, establish that he possessed actual knowledge that his injury was asbestos-related.

Appellees argue in the alternative that, even if this Court should conclude that there is a genuine issue concerning Bagian's actual knowledge of his injury and its cause, in the exercise of the requisite reasonable diligence, he should have known of his injury and its cause prior to November, 1977. Because Bagian was aware of the results of his chest x-ray and of the connection between asbestos and lung injuries, they argue, he was under a duty to become educated about pleural thickening. They further argue that Bagian should have visited a physician in 1974 when he began to suffer shortness of breath, knew of the hazards of asbestos, and knew of his own pleural thickening, the three factors that appellees claim led Bagian to see Dr. Paisley in 1977.

A court in ruling on a summary judgment motion must not try disputed issues of fact, but rather, must determine whether such issues exist. *Wheeler v. Johns-Manville Corp.*, 342 Pa. Superior Ct. 473, 479, 493 A.2d 120, 123 (1985). Viewing the above-stated evidence in a light most favorable to the non-moving party, the Bagians, and drawing all reasonable inferences in their favor, we conclude that summary judgment was improperly granted because

there are genuine issues of material fact. First, we conclude that there is a genuine issue whether Bagian knew or should have known prior to October, 1977, that pleural thickening was an "injury" and, hence, whether he knew he was injured. After receiving his x-ray, Bagian testified that he did not think anything was wrong. We believe that this testimony places his actual knowledge of his injury at issue. Whether or not Bagian exercised due diligence and thus should have known that pleural thickening was an injury is also at issue here. We do not believe that the facts "lead unerringly to the conclusion that the length of time it took the plaintiff to discover the injury or its cause was unreasonable as a matter of law." *Anthony v. Koppers, supra* 284 Pa. Superior Ct. at 110, 425 A.2d at 443 (1980). To the contrary, Bagian's failure to seek medical advice after he went to the trouble of· obtaining his x-ray raises in our minds an inference that he did not know that pleural thickening was an injury and thus thought he had no reason to seek medical advice. We also conclude that there is an issue concerning whether Bagian knew or should have known that pleural thickening could be caused by exposure to asbestos even though it is clear that he knew that such exposure could lead to asbestosis. Accordingly, we reverse the lower court's order granting summary judgment in favor of appellees and remand for further proceedings.

### Frank and Theresa Alice

■ Appellant in No. 173 PHL 84, Frank Alice, was employed at the Philadelphia Naval Shipyard as a welder beginning in 1961. In 1970 or 1971, the head physician at the shipyard dispensary informed Alice that he had asbestosis. (Deposition of Frank Alice, September 22, 1983 at 87). On April 5, 1976, Alice filed and signed a Federal Employee's Notice of Injury or Occupational Disease form with the Office of Federal Employees' Compensation at the United States Department of Labor. On that form the nature of his injury is listed as "Lungs," and the cause of injury is

listed as "Exposed to asbestos." (Memorandum of Law in Support of Appellee, Pittsburgh Corning Corporation's, Motion for Summary Judgment on behalf of all Appellees, exhibit "E").

On June 23, 1977, Dr. Duca of the shipyard dispensary signed a form placing Alice on permanent restrictions from exposure to asbestos. (*Id.*, exhibit "B"). Alice received a copy of this form. (Deposition of Frank Alice at 90–91). On August 29, 1977, Alice delivered a letter written by Dr. Mingroni, a private physician, to the Philadelphia Naval Shipyard informing them that Alice was suffering from asbestosis as a result of his exposure to asbestos. (Memorandum of Law in Support of Appellee, Pittsburgh Corning Corporation's, Motion for Summary Judgment, *supra*, exhibit "D").

On September 25, 1979, Frank and Theresa Alice filed a complaint against appellees alleging that Frank Alice had contracted certain diseases and injuries as a result of his exposure to appellees' asbestos products. The complaint also alleged that Theresa Alice suffered a loss of her husband's society, consortium, and assistance because of appellees' acts. On October 21, 1983, appellees filed a motion for summary judgment contending that the Alices' claims were barred by the statute of limitations. The lower court granted this motion in favor of appellees by order dated December 14, 1983. The Alices have appealed from that order.

The Alices contend that the lower court erred in granting summary judgment in favor of appellees because there are genuine issues of material fact regarding Frank Alice's knowledge of his injury and its cause. The Alices argue that the statute of limitations did not begin to run until September, 1979, when Frank Alice was first able to ascertain the gravity and nature of his injury. They assert that Alice was never informed about the severity of his illness and that his physicians did not lead him to believe that his condition was permanent. Rather, he refers to his deposition testimony wherein he stated that Dr. Duca of the

shipyard dispensary told him that his asbestosis was "[j]ust like you got a cut and it healed and that's all." (Deposition of Frank Alice, September 22, 1983 at 88). The Alices argue that this misinformation as to the consequences of Alice's illness nullified his actual knowledge of his injury.

The uncontroverted facts show that appellant was informed by a shipyard physician in 1970 or 1971 that he had asbestosis. (Deposition of Frank Alice at 87). In addition, Alice submitted a Federal Employee's Notice of Injury or Occupational Disease form dated April 5, 1976, to the United States Department of Labor listing his injury as "lungs" and its cause as exposure to asbestos. Alice also received a dispensary permit dated June 23, 1977, issued by Dr. Duca, placing him on permanent restrictions from exposure to asbestos and a letter from Dr. Mingroni dated August 29, 1977 stating that Alice was suffering from asbestosis as a result of his exposure to asbestos.

After reviewing the uncontroverted facts, we conclude that appellees have shown that Alice knew or should have known of his injury and its cause more than two years before he commenced his action. Therefore, we affirm the order of the court below in No. 173 PHL 84.

### Francis and Elizabeth Morgan

■ Appellant in No. 1051 PHL 82, Francis Morgan, worked as a pipefitter at the Philadelphia Naval Shipyard from 1940 to 1943, from 1946 to 1960, and from 1964 until 1966. From 1966 to 1977 he was employed there as a planner and an estimator. On April 8, 1976, the physician at the shipyard dispensary issued a dispensary permit indicating that Morgan had been examined and diagnosed as suffering from asbestosis. (Appellee, Fibreboard Corporation's, Memorandum of Law in Support of its Motion for Summary Judgment on behalf of all Appellees, exhibit "B"). The same day, Morgan filed and signed a Federal Employee's Notice of Injury or Occupational Disease form with the United States Department of Labor. On that form the nature of his injury is listed as "Lungs," and the cause of

injury is listed as, "Disconnecting, disturbing and modifying piping systems aboard ship insulated/lagged with asbestos." (*Id.*, exhibit "C").

Francis and Elizabeth Morgan commenced this action on July 7, 1978 against appellees for diseases and injuries suffered by Francis Morgan as a result of his exposure to appellees' asbestos products and for Elizabeth Morgan's loss of her husband's society, services, and companionship. Appellees filed a motion for summary judgment contending that the Morgans' claim is barred by the statute of limitations. The lower court granted appellees' motion by order dated November 30, 1981. The Morgans have appealed from that order.

The Morgans contend that the court erred in granting summary judgment in favor of appellees because there are genuine issues of material fact concerning when Francis Morgan had actual knowledge and understanding of his injury. Morgan admits by affidavit that he signed the Federal Employee's Notice of Injury or Occupational Disease form dated April 8, 1976 that listed "lungs" as the nature of his injury and exposure to asbestos as its cause. He states that personnel at the dispensary told him what to write and instructed him to sign the form. He also states that he never saw the dispensary permit issued by the dispensary physician that indicated that he had been diagnosed with asbestosis. Thus, he argues that he did not understand the nature of his injury until he received a letter from Dr. Paisley on July 9, 1976, which indicated that he had asbestosis.

Applying the *Cathcart* test, we conclude that the uncontroverted facts show that by April 8, 1976, Morgan knew, or should have known, that he had asbestosis and that it was caused by his exposure to asbestos. It follows that appellees have met their burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law because the Morgans' action is barred by the two-year statute of limitations. Accordingly, we affirm the order of the lower court in No. 1051 PHL 82.

Order in No. 972 PHL 84 reversed and case remanded for further proceedings. Orders in No. 173 PHL 84 and No. 1051 PHL 82 affirmed. Jurisdiction is relinquished.

CAVANAUGH, J., files a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

I agree with the majority as to their disposition in No. 00173 Philadelphia, 1984 (Frank and Theresa Alice) and in 1051 Philadelphia, 1982 (Francis and Elizabeth Morgan). I respectfully dissent only as to the majority's disposition in No. 00972 Philadelphia, 1984.

I believe this case to be controlled by our *en banc* decision in *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). In *Cathcart* we found "... that there was [a] sufficient basis for the lower court's determination of when the statute of limitations began to run ... [and that there was] no question of fact which would [require] a jury's resolution." *Id.*, 324 Pa.Super. at 146, 471 A.2d at 505. I believe the same to be true in this case. Accordingly, I would affirm the lower court's grant of summary judgment in appellant, Bagian's case.

In *Cathcart*, we stated: "whether the statute of limitations has run on a claim is *usually* a question of law for the judge; however, *at times*, a factual determination by the jury may be required." *Id.*, 324 Pa.Superior Ct. at 140, 471 A.2d 502 (emphasis added). The majority states in its opinion that "... whether a plaintiff has exercised due diligence in discovering an injury and its cause is usually a jury question." Maj.Op. at 62 *citing DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 510, 460 A.2d 295, 299 (1983). I do not believe this to be the best statement of the law in asbestos related cases as this position effectively undermines this court's decision in *Cathcart*.[1] The majority's position would allow an asbestos injured plaintiff, who raises the issue of due diligence in

---

**1.** I note that *Cathcart* involved a factual scenario considerably more appertinent to the case before us than *DeMartino*. *Cathcart* involved

discovering his injury and its cause, to *usually* be entitled to a jury resolution of that issue. A jury resolution of due diligence would effectively determine whether plaintiff complied with the statute of limitations. I believe this is contrary to *Cathcart's* express intention to leave the question of compliance with the statute usually in the hands of the judge.[2]

Our review of this case, as in *Cathcart*, involved whether there was a sufficient basis for the lower court to determine when the statute began to run, and/or whether there was a question of fact which required a jury resolution. *Cathcart. Id.* I conclude that there was a sufficient basis for the trial court to determine that Mr. Bagian knew or reasonably should have known that he was injured and that his injuries were caused by another party's conduct before October of 1977.[3] Consequently, I conclude that there was no issue of fact requiring a jury resolution. *Id.*

Crucial to my conclusion is Mr. Bagian's receipt of his medical report from the Navy Shipyard Infirmary following his physical examination. This report listed as a significant finding, "LOCALIZED PLEURAL THICKENING IN THE RIGHT HEMOTHORAX." While Mr. Bagian testified that he did not pay much attention to this report and that he

this court's review of a grant of summary judgment against a plaintiff in an asbestos case. *DeMartino* involved this court's review of a grant of summary judgment in a dental malpractice case. Accordingly, I believe this court's statements as to summary judgment in *Cathcart* are better authority for the case we are reviewing than those found in *DeMartino.*

2. This is not to imply that *Cathcart* disregards the issue of due diligence. However, I believe that *Cathcart's* intent was to incorporate the issue of due diligence within its "reasonably should know" standard, thus leaving this matter usually within the judge's responsibilities. *Cathcart* held that the statute begins to run when the plaintiff knows or reasonably should know that he has been: (1) injured; (2) by the cause of another party's conduct. *Id.*, 324 Pa.Superior Ct. at 136–37, 471 A.2d at 500.

3. Plaintiff brought his cause of action against defendant in October of 1979. Accordingly, with the two year statute of limitations, if plaintiff was on notice of his injury and that his injury was caused by another prior to October of 1977, his cause of action would be barred by the statute of limitations.

thought nothing was wrong, he admitted that he looked at the report. Accordingly, I believe he was charged with the knowledge of his injury as of the date of the receipt of this report: June, 1972. I reached this conclusion even in light of the stringent requirements needed to grant summary judgment.[4] Even granting all favorable inferences to plaintiff as the moving party, it is beyond dispute that plaintiff reviewed this document which highlighted his injury. It is also beyond dispute that plaintiff resorted to unusual methods to obtain this document. As the lower court recounted, the plaintiff created a fictitious doctor to obtain his medical report:

4. The requirements for summary judgment are significant:

Ordinarily, summary judgment should only be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Pa.R.C.P. 1035. And see *Davis v. Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970); *Bollinger v. Palmerton Area Com. Endeavor, Inc.*, 241 Pa.Superior Ct. 341, 361 A.2d 676 (1976). Furthermore, summary judgment is only proper in cases which are clear and free from doubt as to the existence of a disputed factual question. See *Mallesky v. Stevens*, 427 Pa. 352, 235 A.2d 154 (1967); *Toth v. Philadelphia*, 213 Pa. Superior Ct. 282, 247 A.2d 629 (1968). In ruling on a motion for summary judgment the court must accept as true all well-pleaded facts in the non-moving party's pleadings, as well as admissions on file, giving to them the benefit of all reasonable inferences to be drawn therefrom. See *Hankin v. Mintz*, 276 Pa.Superior Ct. 538, 419 A.2d 588 (1980); *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Superior Ct. 198, 280 A.2d 570 (1971). The record as a whole should be examined in the light most favorable to the party opposing the motion and all doubts as to the existence of a genuine issue about a material fact must be resolved in that party's favor, that is, against the entry of summary judgment. See *Bowman v. Sears, Roebuck & Co.*, 245 Pa.Superior Ct. 530, 369 A.2d 754 (1976); *Husak v. Berkel, Inc.*, 234 Pa.Superior Ct. 452, 341 A.2d 174 (1975); *Schacter v. Albert*, 212 Pa.Superior Ct. 58, 239 A.2d 841 (1968). And see *Hankin v. Mintz, supra; Ritmanich v. Jonnel Enterprises, Inc., supra.* In disposing of such a motion the court's function is not to decide issues of fact, but solely to determine whether there are material issues of fact to be decided. See *Hankin v. Mintz, supra; Ritmanich v. Jonnel Enterprises, Inc., supra.*
*Woytek v. Benjamin Coal Co.*, 300 Pa.Super. 397, 404–05, 446 A.2d 914, 917–18 (1982), *quoting Community Services of Clearfield, Inc. v. Local 2665, American Federal of State, County and Municipal Employees, AFL–CIO*, 292 Pa.Super. 238, 242, 437 A.2d 23, 25 (1981).

In 1972, however, the plaintiff engaged in an intricate subterfuge to discover the results of a "medical exam [he] had at the Navy Yard." N.T. at 54. Because "[t]hey don't want to tell you anything if you don't have a doctor," N.T. at 53, the plaintiff requested that the results of his annual Personnel Health Inventory at the Philadelphia Naval Yard be sent to a fictitious "Dr. Sardarian." There was no Dr. Sardarian; in reality, the medical report was sent to the plaintiff's brother-in-law. The plaintiff admitted on questioning that his brother-in-law subsequently gave the plaintiff this report and that the plaintiff read it. The letter from J. Caruso, Capt. MC., U.S.N. to "Dr. Sardarian" dated June 27, 1972 was attached to the deposition as an exhibit. N.T. at 53–55, 67–68. Under the hearing "significant findings," it stated: "CHEST X–RAY: LOCALIZED PLEURAL THICKENING IN THE RIGHT HEMITHORAX." The defendant denied that he ever showed this report to anyone else while conceding that his two sons were physicians. N.T. at 53, 67. (Lower Court Op. at 4–5).

Additionally, it is not an issue that the plaintiff knew he was working with asbestos as early as 1941; that he was aware of the dangers of working with asbestos by 1971; and that he was aware that the deaths of several Navy Yard workers were related to "... breathing that damn junk all these years...." Plaintiff was also told in 1971 that exposure to asbestos "caused asbestosis, which frequently or sometimes developed into mesothelioma or some cancer or something." I believe plaintiff's receipt of the medical report, combined with the environment in which he worked, put him on notice of his injury. Furthermore, plaintiff had a duty to "diligently investigate the facts upon which a potential action [could be based]." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). Accordingly, under *Cathcart* plaintiff clearly knew, or reasonably should have known, that he was injured. As to Mr. Bagian's knowledge

that his injury was caused by another's conduct, *Cathcart, supra,* the lower court stated:

The second prong of the *Cathcart* test requires that the plaintiff know, or reasonably should have known, that his injury was caused by another party's conduct. Since the plaintiff sought the medical report of an x-ray which had been taken at his work place, the Navy Yard, he obviously suspected that he had been injured through the conduct of his employers and/or those who manufactured and supplied the material with which he worked. *See* N.T. at 54. This conclusion is inescapable in light of the chronology outlined by the plaintiff in his deposition concerning precautions then taken at his work place to safeguard workers from asbestos exposure. In the deposition, the plaintiff stated that it was in 1971 that he first became aware of the danger of asbestos through the deaths of fellow pipe coverers and through the precautions taken at his work place to limit exposure to asbestos. A year later, according to the plaintiff's testimony, he sought information as to results of his own chest x-ray and then learned that it revealed pleural thickening. Armed with this information, he reasonably knew or should have known "that his injury was caused by another party's conduct." (Lower Court Op. at 13, 14).

I believe the lower court had a sufficient basis to conclude that there was no genuine issue as to whether Bagian should have known that his pleural thickening was an injury and that it was caused by exposure to asbestos prior to Dr. Paisley's diagnosis in November, 1977.

In concluding that the statute of limitations, combined with our decision in *Cathcart*, preclude plaintiff's cause of action, I emphasize the important policy concerns connected with the statute. In *Gravinese v. Johns-Manville Corp.*, 324 Pa.Super. 432, 471 A.2d 1233 (1984) this court stated:

Statute of limitations are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human

affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extended to the limit prescribed, is itself a conclusive bar. The bane and anecdote go together.

*Schmucker v. Naugle,* 426 Pa. 203, 205–206, 231 A.2d 121, 123 (1967), *quoting United States v. Oregon Lumber Co.,* 260 U.S. 290, 43 S.Ct. 100, 102, 67 L.Ed. 261 (1922). *See also Insurance Co. of North America v. Carnahan,* 446 Pa. 48, 284 A.2d 728 (1971). Accordingly, I would affirm the lower court's decision, and respectfully dissent from the majority's disposition on this matter.