## Kinsinger v. Gorsuch

*Jon A. Barkman*, for plaintiffs.
*Alexander Ogle*, for defendants.
*John J. Dirienzo*, for additional defendant.

COFFROTH, *S.J.*, January 27, 1988[1] — We have for resolution the following:

(1) Motion of defendant Karen Gorsuch for summary judgment,

(2) Plaintiffs' motion to amend the complaint in no. 114,

(3) Preliminary objections of defendants to the complaint in no. 12, and

(4) Plaintiffs' motion to consolidate the actions for trial.

As we see it, the matters before us present the following

## QUESTIONS AT ISSUE

(1) In a wrongful death and survival action brought against a 13-year old boy and his parents arising from the fatal shooting of plaintiffs' decedent alleging inter alia negligence of the parents in permitting the boy to have access to the loaded firearm, is defendant mother entitled to summary judgment on the basis of her affidavit and the father's deposition stating that the mother resided in Florida at the time of the shooting and for three months prior thereto, and plaintiffs filed no factual response to the motion? Answer, no.

(2) In such case, are damages for loss of their child's consortium recoverable in the wrongful death and/or survivial action? Answer, no.

(3) In a wrongful death and survival action, may plaintiffs recover for decedent's pain and suffering?

---

1. As shown by order of this date, this opinion has been substituted for the original opinion dated and filed October 19, 1987, which has been withdrawn. See reference to this note 1 infra. The changes made affect only question at issue no. 1 and part 1A, "Motion For Summary Judgment."

Answer, yes, in the survival claim, but not in the wrongful death claim.

(4) Where the plaintiffs file two actions in the same court against the same parties on the same causes of action for the same relief (wrongful death and survivial actions), should the second action be dismissed by reason of pendency of the prior action? Answer, yes.

## THE PLEADINGS

No. 114 Civil 1985:

In no. 114 above captioned, the first filed action, plaintiffs are the administrators of their 14-year-old daughter who died when shot by defendant Richard (Rick) Gorsuch, a 13-year-old minor. Defendants are Richard Gorsuch and his parents David and Karen Gorsuch. The complaint charges Richard with negligence and recklessness in handling the gun and the parents with negligence and recklessness in failing properly to instruct, teach and advise Richard in the care, custody and handling of firearms, and in failing to supervise, advise and conduct Richard's activities, "knowing or should having known [sic] that said firearms were available to and/or present. . . ." The first count is for wrongful death to recover pecuniary loss and expenses for the parents as the statutory beneficiaries, and the second count is a survival action brought to recover damages in behalf of decedent's estate. Defendants filed an answer denying negligence and recklessness, alleging that "defendant Karen Gorsuch was in the state of Florida at the time of the accident and had no notice or knowledge that firearms were available to and/or present in an area open to Ricky." The answer also contains new matter alleging that Richard was under the age of 14, that

decedent was over the age of 14, that decedent and her mother, plaintiff Linda Kinsinger, knew at the time of the shooting that the weapon was loaded, and that plaintiff Linda Kinsinger, "when leaving her home", "left alone and unsupervised in the home" decedent, Richard, another 13-year-old minor (Lisa), a 4-year-old child (Ronnie) and an infant (Nikki). The reply to new matter denies the averments against Linda Kinsinger above datailed, and demands proof of Karen Gorsuch's absence in Florida. Linda Kinsinger was later added as an additional defendant in the action and an additional defendant complaint was filed against her by the original defendants alleging that decedent resided with her mother Linda Kinsinger in the latter's home where the shooting occurred and where defendant Richard Gorsuch was in invited guest at the time, that the additional defendant was negligently responsible for the death, and that additional defendant is alone liable or jointly liable for the death. No answer to the additional defendant complaint had yet been filed. Plaintiffs thereafter filed the pending motion to amend their complaint to detail and enlarge their damage claims as hereinafter specified.

No. 12 Civil 1986:

While no. 114 was pending, but before defendants' pending motion for amendment therein was filed, a complaint in no. 12 was filed. Plaintiffs in no. 12 are the parents of the deceased daughter as administrators and individually; defendants in no. 12 are the same as those in no. 114, buth there is no additional defendant in no. 12. The initial complaint in no. 12 alleges that the death was negligently or recklessly caused by defendants substantially as in the complaint in no. 114, and contains four counts as follows:

First Count: By the administrators against defen-

dants allegedly pursuant to Judicial Code §8301 (wrongful death) and section 8302 (survival) and Pa.R.C.P. 2202(a) (wrongful death). The damages claimed are for decedent's pain and suffering, the parent's pecuniary loss, and for loss of consortium of "said parents and representative.."

Second Count: By the administrators in behalf of decedent's estate pursuant to Probate Code §3373 and Judicial Code section 8302 (survival action) seeking the same damages as claimed in the first count under identical averments.

Third Count: By plaintiff Linda L. Kinsinger only, "parent and natural guardian of the decedent" for loss of consortium suffered by "said parents and respresentative."

Fourth Count: By plaintiff James R. Kinsinger only, "parent and natural guardian of decendent" for loss of consortium suffered by "said parents and representative."

The complaint above described was verified by plaintiff mother on May 8, 1986, and was filed May 9, 1986. Thereafter an identical complaint was filed, verified by plaintiff father on May 19, 1986 and filed May 21, 1986.

On October 14, 1986, defendant Karen Gorsuch filed a motion for summary judgment in no. 114 on grounds of her absence in Florida and non involvement in the incidents leading to the death. On the same date, defendants filed preliminary objections to the complaint in no. 12.[2] The preliminary objec-

2. Although defendant Karen Gorsuch filed in both actions a brief in support of her motion for summary judgment and a scheduling praecipe therefor, a motion for summary judgment was filed in no. 114 but we find no such motion filed in no. 12. Nevertheless the issue of the liability of defendant Karen Gorsuch for non-involvement appears to be an identical issue in both actions.

tions consist of: (1) a motion to strike the complaints in their entirety because they are "confusing, ambiguous, prolix and makes it unduly burdensome, if not impossible, for the defendants to file a meaningful answer", because the averments indiscriminately intermix claims of plaintiffs as administrators and their individual claims, and because death actions were previously filed in no. 114; and (2) a demurrer to the third and fourth counts claiming loss of consortium and pain and suffering.

## DISCUSSION

### I

### No. 114 Civil 1985:
### Motion For Summary Judgment

The motion for summary judgment was filed by and relates only to defendant Karen Gorsuch, mother of Richard Gorsuch who discharged the gun causing the death of Tracy Renee Kinsinger, on the ground that she and her husband, defendant David Gorsuch, were separated and not living together in the latter part of October, 1983, and that she resided in the state of Florida from that time through January 14, 1984, when the shooting occurred in Somerset County. From those facts, defendant Karen Gorsuch contends that, under the averments of the complaint, she cannot be responsible for the death as a matter of law, citing: *Lapp v. Galley,* 27 D.&C.3d 655 (1982); *Piell v. Shanksville-Stonycreek School District et al.,* 33 Somerset L. J. 219 (1976); *Latorre v. Stoll,* 35 D.&C.3d 430 (1983); *Mazilli v. Selger,* 23 N.J. Super. 496, 93 A.2d 216, affirmed 13 N.J. 296, 99 A.2d 417 (1952). The portions of the record relied on as supporting the motion for judgment re: (1) paragraph 30 of defendants' new matter alleging the absence of de-

fendant Karen Gorsuch in Florida as aforesaid and paragraph 30 of plaintiffs' reply thereto denying the absence for want of knowledge and demanding proof, and further stating that even if true, non-liability does not follow as a matter of law, (2) page 13 of deposition of defendant David Gorsuch in support of the absence in Florida, and (3) her affidavit attached to the motion for judgment asserting her absence in Florida as aforesaid. No opposing affidavits have been filed by plaintiffs as prescribed by Civil Rule 1035(b) and (d), plaintiffs claiming the benefit of the *Nanty-Glo* rule.

Summary judgment is governed by Civil Rule 1035. The basis for it is stated in subdivision (b) of the rule which reads in relevant part as follows:

"The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The first and basic requirement for summary judgment, therefore is that the motion and its supporting data unequivocally dispel the existence of any factual issue for trial, of which the moving party has the initial burden. *Amabile v. Auto Kleen Car Wash,* 249 Pa. Super. 240, 376 A.2d 247 (1977) and *Bollinger v. Palmerton,* 241 Pa. Super. 341, 361 A.2d 676 (1976), and failure of the moving party to carry that burden will result in denial of the motion, *Marchese v. Marchese,* 457 Pa. 625, 326 A.2d 321 (1974). Here, defendant mother (Karen Gorsuch) as the moving party has failed to carry that burden, and the motion must therefore be denied without further inquiry into plaintiffs' burdens, for the reasons which follow.

The shooting apparently took place in the home of decedent (Tracey, 14 years old) and her mother Linda Kinsinger (plaintiff and additional defendant) at a time when a loaded firearm was available to Tracy and to defendant Richard Gorsuch (13 years old) a visitor in the Kinsinger home, in the absence of any supervising adult. At the time and for about three months prior thereto defendant Karen Gorsuch, Richard's mother, resided in Florida, having moved there after separation from her husband (Richard's father, also a defendant) when she lived with them in Somerset County. As we said in *Lapp v. Galley, supra*, 42 Somerset L. J. at 29, 35 D.&C.3d at 667-8:

"The mere relationship of parent and child does not impose on the parent legal liability for the child's torts. PLE, Parent and Child §16; CJS, Parent and Child §123. But parents may be liable for a tortious act of their child where the act is done by the child as agent of the parent, or where the negligence of the parent is a cause of injury. PLE, *supra*, §16; CJS, *supra*, §124-125. As stated in *Piell v. Shanksville-Stoneycreek School District et al.*, 33 Somerset L. J. 219, 220 (1976):

" 'Under present Pennsylvania law, in order to hold a parent or parents responsible for injuries caused to another by their child, it must appear that the parents had made their child their agent in undertaking the activity in question, or that the parents were present and had the opportunity to prevent the injury by exercising a reasonable control over the child, or that they knew or should have known that the child intended or was likely to cause the injury and took no reasonable steps to prevent it.' "

The general rule for parental control is summarized in Restatement (Second) of Torts Section 316 as follows:

*"Duty of Parent to Control Conduct of Child* — A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

"(a) knows or has reason to know that he has the ability to control his child, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

It is apparent from the foregoing that "[a] critical factor in imposing liability on a parent for negligent supervision is the existence of facts which establish that the parent knew or had reason to know" of circumstances posing an unreasonable risk that the child may harm another. See *Latorre v. Stoll, supra,* 35 D.&C.3d at 431 (1983); Restatement (Second) of Torts §282h. In *Lapp, supra,* we also held that:

"The foregoing principles are especially applicable to cases where an adult so keeps his firearm that children present may find it and use it; the adult should know of the attraction which firearms have for children and of the propensities to seek them out and to play and experiment with them without mature responsibility, and such parent will be held liable for the result of the use of the firemarm by a child whom the parent negligently allows to have access to it, particularly unsupervised access." 27 D.&C.3d 688-9.

The very essence of negligence is the actor's *knowledge* in determining whether he or she acted negligently.

Defendant Karen Gorsuch being absent in Florida at the time of shooting, was not present at the time and place of the alleged negligent shooting and did not witness it and could not have controlled Richard at that time; but the material submitted in

support of the motion for summary judgment merely establishes her residence in Florida and does not negate knowledge on her part of Richard's visits to the Kinsinger home and the availability there of firearms; such knowledge on her part, and of the attendant risks, may seem remote but is not conclusively negated, given the relationship between the families as detailed in depositions.[3] The questions still remain: (1) "What did she know and when did she know it", and (2) what could and should she have done to avoid the shooting if she knew or should have known of the availability of the firearm to her son, either by action before she left for Florida or by long-distance communication to Florida from Somerset County? Only a searching and factually detailed inquiry into those questions and their ramifications can negate defendant mother's negligence in the case. Hence, we cannot accept her contention that her mere residence in Florida for the period stated is sufficient to warrant summary judgment. It cannot be said here that there is no genuine issue of material fact for trial.

---

3. The only reference to the moving party's knowledge or reason to know of relevant facts are: (1) the brief and undetailed averment in paragraph 8(g) of the complaint that she knew or should have known of the availability or presence of the firearm, and (2) the general denial in paragraph 8(g) of the answer that she had no such notice or knowledge; controverted allegations in pleadings are of no weight or value in proceedings for summary judgment, see *Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973). Indeed, the matter of her notice or knowledge was not even mentioned in her affidavit accompanying motion, or in any of the other data submitted in support of the motion. Although it is possible for a pleading to qualify as an affidavit under Rule 1035 if sufficiently detailed, conclusory and undetailed allegations are insufficient to support the motion which must show that there is no genuine material fact for trial.

As to plaintiffs' failure to repond with factual data in opposition to the motion, the relevant part of Rule 1035 is the last two sentences of subdivision (d) which provide as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

This suggests that plaintiffs' failure to oppose the motion with factual data responsive to that presented in support of the motion, will ipso facto produce a default summary judgment; but that can occur only if summary judgment is otherwise proper as stated in Goodrich Amram 2d § 1035(d):5, p. 462:

"The failure of the adverse party to do anything in response can result in a grant of the motion *by default* only 'if appropriate.' " (emphasis supplied)

Compare *Gooden v. Bimeal,* 37 Somerset L. J. 219, 222 (1979). Since summary judgment cannot be "appropriate" unless the motion first adequately shows that there is no genuine issue of material fact for trial, the failure of the motion in the instant case to meet that requirement precludes granting it, even though plaintiffs have not complied with Rule 1035(d) by responding to the motion with affidavits or other specific factual material.

Plaintiffs contend that application of the *Nanty-Glo* rule to defendant's affidavit and factual data supporting the motion presents a question of credibility which must be presented to the fact finder, thus making summary judgment "inappropriate". Although we initially felt the contention valid in this

case (see note 1 ante), we believe that *Nanty-Glo* does not come into play unless and until it is determined that the motion is supported by adequate factual data, not the case here. Moreover, there appears to be some question whether *Nanty-Glo* is applicable when the party opposing the motion fails to respond to it as required by the rule, but we need not resolve that problem here. See *Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973); see also, *Goodrich Amram* 2d §§1035(b):4, 1035(d):1, and :3 and :5; Standard Pennsylvania Practice §32.52; PLE Judgment §6; *Radkowski v. Nationwide,* 36 D.&C.3d 485 (1985); *Gulentz v. Nationwide,* 34 D.&C.3d 588 (1984); *Harn v. Milwaukee Tool Co. Inc.,* 33 D.&C.3d 632 (1984); *Reil v. Johns-Manville Corp.,* 25 D.&C.3d 645 (1983); *Devlin v. Shearson Hayden Stone Inc.,* 21 D.&C.3d 213 (1981); *Edwards v. Commonwealth,* 135 PLJ 235 (1986); *Jamestown Paint & Varnish v. Stewart,* 49 D.&C.2d 437 (1970); *Harmon v. Christophel,* 65 Lancaster 203 (1976); *Royer v. General Motors Corp.,* 16 Lebanon 136 (1976); *Cumberland County National Bank & Trust Co. v. Wells,* 26 Cumberland 107 (1976); *Phillips v. Eckert,* 82 York 21 (1968).

## *Motion To Amend Complaint*

As previously noted, the complaint pleads in separate counts wrongful death and survival claims; the motion to amend seeks amendment of paragraph 12 of the first count (wrongful death) and to add paragraph 19 to the second count (survival claim) to specify pecuniary losses claimed (loss of decedent's wages and earning power, and medical, funeral and headstone expenses for decedent and administrative expense), to claim damages for decedent's pain

and suffering, and to claim "loss of consortium, companionship and affection as a result of the child's death."

Defendants oppose the motion insofar as the claim for loss of consortium is concerned on the ground that Pennsylvania recognizes such claims only as between spouses, not as between parent and child, citing: *Quinn v. Pittsburgh,* 243 Pa. 521, 90 Atl. 353 (1914); *Willinger v. Mercy Catholic Medical Center of Southeastern Pennsylvania,* 482 Pa. 441, 393 A.2d 1188 (1978); and *Hollar v. Milton Hershey Medical Center,* 106 Dauphin 350 (1985).

Plaintiffs acknowledge that the Pennsylvania appellate courts have refused to recognize a parental claim for loss of a child's consortium in any case; but they argue that there is a fundamental injustice and inconsistency in allowing the spousal claim for consortium loss and denying it as between parent and child, because the loss is equally real and equally compensable within reasonable limits in both caes. And they further argue that there is a distinct trend in the modern cases to allow such claims which we ought to follow, citing: *Lavell v. Frankford Hospital* 9 Phila. 263 (1983); *Ripley v. Chapman,* 67 Erie 122 (1984); *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1974); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); and a number of extra-state cases.

We are inclined to agree that loss of parent-child consortium is as real and as justifiably compensable as is spousal loss of consortium, as the opinions in *Lavell, Ripley* and *Hollar, supra* so ably argue.[4] But

4. At common law, the only recognized claim for loss of consortium was that of the husband when the wife was injured and a parallel claim by the wife for loss of consortium when the husband was injured was denied. See *Neuberg v. Bobowicz,* 401 Pa. 146, 162 A.2d 662 (1960); *Brown v.*

plaintiffs' argument overlooks the distinction between the personal injury case (in which the spouse's consortium claim is allowable) and the death case (in which it is not); the right to consortium damage stops at the moment of death. See *Willinger,* 482 Pa. at 446-7, 393 A.2d at 1190-1; *Gaydos v. Domabyl,* 301 Pa. 523, 530-31, 152 Atl. 549 (1930). Such is also the general rule elsewhere under death statutes limiting recovery to *pecuniary* loss. See Restatement (Second) of Torts §§ 905 comment f, 925 and 926; CJS, Husband & Wife, §401 (c) (3) page 899; Summary of Pennsylvania Jurisprudence, Torts II §604.[5] Accordingly, to allow recovery here would require us to disregard not only our appellate denial of parent-child consortium claims, as did the court in *Lavell, supra,* (a child injury case), but also to disregard our appellate denial

---

*Glenside Lumber & Coal Co.,* 429 Pa. 601, 240 A.2d 822 (1968). In the latter case, Justice Musmanno in dissent said:

"It cannot be successfully argued that loss of consortium by either spouse is a negligible loss unworthy of compensation. Only a cynic or a bachelor (which may be tautology) could so argue." *Id.* at 606, 240 A.2d at 824.

In a parent-child case, perhaps it may be said that "only a cynic or the childless could so argue." The wife's right to loss of consortium upon wrongful injury to her husband was finally allowed in *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) by force of Pennsylvania's Equal Rights Amendment.

In *Neuberg, supra,* spousal equality was argued for on the principle of: "What is sauce for the goose is sauce for the gander", to which Justice Eagen replied: "Be that as it may, it is in our opinion, today more than ever, just that: sauce." *Id.* at 149, 162 A.2d at 663.

5. Nonpecuniary harm is harm which is compensable without proof of pecuniary loss, and pecuniary harm is harm which is not compensable without proof of pecuniary loss. *Berkebile v. Nationwide Insurance Co. et al,* 40 Somerset L.J. 368, 374 (1981); Restatement (Second) of Torts §§905-906.

of consortium claims in death cases for which no precedent in death cases is cited. *Lavell, supra,* is a personal injury action in which the court allowed the parental loss of consortium claim; *Hollar, supra,* is a personal injury action in which the court disallowed the parental loss of consortium claim; *Ripley, supra,* is a death action in which the court disallowed the parental loss of consortium claim.

Plaintiff's contention has much reason to support it, but no appellate authority. We have already said that parent-child consortium claims should be equated with spousal consortium claims; but that is of no help in death cases where all consortium claims are disallowed. It seems true that if consortium is lost when the spouse or child is injured, the loss is even greater when the injury causes death. As the trial judge in *Willinger, supra,* said:

"We feel that the total loss of all senses as occurs in death, also requires compensation." 241 Pa. Super. at 468, 362 A.2d at 286. But he was promptly reversed in the Superior Court and in the Supreme Court as recently as 1978. There is no indication in the appellate opinions that those courts are at all inclined to yield on their longstanding construction of the wrongful death and survival statutes.

Plaintiffs here seek to include these consortium claims in the death actions in no. 114, not as an additional separate count on the theory that the surviving parents should have a separate cause of action for loss of consortium; but that was the contention of the widow plaintiff in *Linebaugh v. Lehr,* 351 Pa. Super. 135, 505 A.2d 303 (1986) in which the court refused to recognize such claim, saying that the widow must recover all of her damages in the wrongful death claim, which may in-

clude "the pecuniary value of the services, society and comfort she would have received from the decedent." 351 Pa. Super. at 138, 505 A.2d at 305, affirming 37 D.&C.3d 305 (1984). See also, *Slaseman v. Meyers,* 309 Pa. Super. 537, 455 A.2d 1213 (1983); *Green v. Bittner,* 85 N. J. 1, 424 A.2d 210 (1980); Goodrich Amram 2d §2201:27.

Accordingly, like *Ripley* and *Hollar, supra,* we cannot see our way clear to disregard our appellate rulings, hence we must deny plaintiffs' motion for leave to amend insofar as it seeks to introduce claims for loss of consortium.

We also note that while the claim for decedent's pain and suffering is not allowable in the wrongful death claim because not a pecuniary loss, *Ringler Estate* (no. 1), 26 Somerset L.J. 36, 343 (1979), it is allowable in the survival action which permits recovery of the same elements of damage which decedent could have recovered had he lived, *Id.* at pages 340 and 344, and Goodrich Amram 2d §2201:33 at pages 271-2.

## II

### No. 12 Civil 1986:
### Consortium Claims

As we previously stated in connection with no. 114, the consortium claims there are asserted only as elements of damage recoverable in the wrongful death and survival causes of action, not in separate counts as a distinct cause of action available to the parents as individuals. Our reading of the complaints filed in no. 12 leads us to the same conclusion, although there is some ambiguity about it by reason of the use of separate counts for the loss of consortium claims. If plaintiffs are asserting or intend to assert the consortium claims of the third and

fourth counts of their complaints in no. 12 as separate and distinct consortium causes of action in behalf of the parents individually, not merely as elements of damage to be recovered. in the death actions, there is no such separate cause of action recognized in Pennsylvania and they must be denied under *Linebaugh v. Lehr, supra,* and the demurrer would have to be sustained as to such claims.

## Pendency of Prior Action

It is now clear that no. 12 is in substance a duplication of no. 114, each asserting the same wrongful death and survival claims; it is also now clear that, except for the procedural problem of double complaints in no. 12, the pending issues are the same in both cases. The propriety of this duplication, pendency of the prior action, is properly challenged in preliminary objections under Civil Rule 1017(b)(5).

In *Cleveland v. P&ARCo,* 27 Pa. 380, 1 Grant's cases 212 (1856), Justice Jeremiah Black stated (382), quoted in *Renaldo v. Vivian,* 25-26 Somerset L. J. 340, 345 (1971):

"Two suits for the same cause of action, even when brought in the same court, will never be tolerated."

Since it appears here that in both actions the same parties are involved, the same rights are asserted and the same relief is sought, the preliminary objection must be sustained and the later filed action dismissed. See *Commonwealth ex rel Lindsley v. Robinson,* 30 Pa. Commw. 96, 372 A.2d 1258 (1977). The fact that plaintiff Linda Kinsinger is also an additional defendant in no. 114 and not in

no. 12 does not alter the result.[6]

Accordingly, we have no need to deal here with any other issue, including the motion for consolidation which upon dismissal of no. 12 is moot.

## ORDER

Now, October 19th, 1987, it is ordered as follows:

(1) In no. 114 Civil 1985, (a) the motion of defendant Karen Gorsuch for summary judgment is denied, and (b) the motion of plaintiffs to amend the complaint is denied (i) insofar as claims for loss of consortium are asserted, and (ii) insofar as a claim for pain and suffering is asserted in the first count (wrongful death), otherwise is granted.

(2) In no. 12 Civil 1986, (a) the demurrer is sustained insofar as individual consortium claims are asserted by the parents, and (b) the preliminary objection on grounds of pendency of a prior action is sustained. Accordingly, all claims in no. 12 are dismissed.

The motion for consolidated of nos. 114 and 12 is denied for mootness.

---

6. See also Goodrich-Amram 2d §2202(c):1 and Civil Rule 2202 which provides:

"(a) Except as otherwise provided in clause (b) of this rule, an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death.

"(b) If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages.

"(c) While an action is pending it shall operate as a bar against the bringing of any other action for such wrongful death."